## H. D. MANDEVILLE et al., Trustees, *v.* M. E. HUSTON.

The fact that a person has voted in this State, and even become a candidate for the Legislature here, is not sufficient to show a change of domicil from another State, if it be proved that he never made a permanent change in his residence.

In a suit brought by the trustees of a Mississippi Bank to recover money due on a judgment obtained by them in the State of Mississippi, which judgment was barred by the statute of limitations there—*Held:* That the Act of the Legislature of the 27th of May, 1846, was intended to prohibit the exercise of any right which the laws at home did not permit to be exercised there; and that, where a bank could not exercise a right growing out of a judgment in Mississippi, on account of the statute of limitations, the Act of 1846 would prevent its exercise here.

The doctrine of the interruption of prescription is not admitted at common law to the extent allowed by the Civil Law; the maxim there is, that when the statute of limitations has once commenced to run, it never stops on account of any subsequent disability. But by the law of Mississippi, an exception is made to this general rule in favor of the *first* absence of the debtor from the State at the time of the accruing, or after the accruing of the action, which is alone to be deducted.

APPEAL from the District Court of the Parish of East Feliciana, *Ratliff*, J. *T. G. Morgan* and *Fuqua & Kilbourne*, for plaintiffs. *Muse & Hardee* and *Benjamin, Bradford & Finney*, for appellant.

MERRICK, C. J. The Planter's Bank of Mississippi obtained two judg-

36

ments in 1843, against *Gen. Felix Huston* and others, in the courts of Mississippi.

The Planters' Bank subsequently made an assignment of the judgments with other effects to trustees for the payment of debts. Afterwards, the charter of the bank was declared forfeited. The trustees being desirous of enforcing these judgments, brought suits in chancery on the same, and obtained decrees in each, the same being signed on the 3d day of July, 1850. They, the judgments, amount to $22,971 34, with interest at seven per cent. thereon from July 2d, 1850, until paid.

The present suit is instituted by the said trustees of the Planters' Bank to recover said sum from the defendant, as executrix of the last will and testament of *Felix Huston*, deceased.

The right of the trustees to stand in judgment is no longer an open question. *Walworth et al.* v. *Routh*, 14 An. 205.

The main defence to this action, is the statute of limitation of seven years of the State of Mississippi, which we have had occasion recently to consider in the case of *Morton & Hamner* v. *Valentine*, 15 An. The case differs from that, however, in several particulars.

In this case, the proof shows that for a time previous to the rendition of the decrees in the chancery cases, and up to his death in 1857, *Felix Huston* had his habitual and usual domicil in Adams County, Mississippi. During all this period, he was subject to the jurisdiction of the courts of Mississippi; so that process at any time might have been served upon him. His friends and neighbors knew of no other domicil.

At the same time, he had a plantation upon Thompson's Creek, in the parish of East Feliciana, in this State, which engrossed much of his care and attention. He visited it often, but (with perhaps a single exception in 1853) his visits were short, never occupying more than two or three weeks; yet, he seems to have had the intention at least, at times, of making East Feliciana his permanent domicil. He has been known to vote there, and in 1853 was a candidate for the Legislature. He also signed acts describing himself as of that parish. Suits were commenced against him there, and the executrix applied for letters testamentary in the same parish. One witness, *Gen. Cole*, who knew well how much of his time was spent in East Feliciana, says: " The family domicil of *Gen. Huston* was in Adams County, State of Mississippi. to my knowledge, from the year 1844 up to the day of his death." This is corroborated by other witnesses of much respectability. The family physician says: " *Gen. Felix Huston* spent much of his time at his place on Thompson's Creek, Louisiana, but was hardly ever absent from his residence near Washington in this (Adams) county for more than two or three weeks at a time, and since 1850. Witness considered his residence to be in this county, and does not know that he resided in Louisiana, although he had a plantation there. All witness knows in relation to the residence of *Gen. Felix Huston* in Louisiana since 1850, is, that he frequently left his residence in Mississippi, and visited his plantation on Thompson's Creek, Louisiana, where he would sometimes remain a week or two, or longer, and return to his home in this county. Such visits hardly ever exceeded three weeks at a time, and most usually but a few days."

We assume, therefore, that the true and principal domicil of *Felix Huston* was in the State of Mississippi from 1850 to the day of his death. See 7 An. 411.

This being conceded, the defendant then contends, that she is permitted by law

to avail herself of the Mississippi statute of limitations of seven years as a defence to the judgment.

She not only relies on the Act of 1855, cited at length in the case of *Morton & Hamner* v. *Mark Valentine*, 15 An., but also of the Act of 27th May, 1846, p. 161, in these words : " *Be it enacted, &c.*, That no bank or other corporation of any other State, or of any foreign country, nor any creditor under them, under assignment or otherwise, *shall, in seeking to enforce the collection* of debts due by the citizens of this State, exercise any right which such bank or other corporation, or such creditor under them could not exercise by virtue of the laws of the State, or of the foreign country in which such bank or corporation is situated."

The question we now have to decide under this statute will be best understood by adopting the words of plaintiff's counsel in stating it. He says :

" But it is urged, that the Acts of the Legislature of Louisiana of May 27th, 1846, (p. 161,) and March 15th, 1855, (p. 224,) have naturalized the laws of Mississippi upon the subject of prescription, and so far as foreign judgments are concerned, made them our own. *We are not disposed to question the correctness of this position. We admit that if the* RIGHT *has ceased to exist in Mississippi, it can have no legal existence here*, or in the language of the Act of 1846, that no creditor can ' exercise any *right* which such creditor could not exercise by virtue of the laws of the State or foreign country ' in which the debt was contracted. The Act of 1855 is to the same effect. The question then arises, have the plaintiffs lost their right in Mississippi, is their judgment barred by the statute of that State ? "

Counsel then distinguish between the *right* and the *remedy*, and sum up on this branch of the case in these words :

" The law of Mississippi gives the judgment creditor two remedies, or rather points out two modes of keeping his judgment alive, of neither of these can he avail himself before our courts, the loss of *both* remedies would carry with it the loss of the right itself; but the loss of only one leaves the right intact. And so long as that exists, our courts will accord a remedy consistent with our laws. And that is, not to allow him to have his Mississippi judgment revived by *scire facias*, or grant him an execution upon it ; but he is permitted to sue on it in the ordinary way, and obtain a new judgment."

The candid admission of counsel, as to the meaning of the Act of 1846, gives us more confidence in our own conclusions upon the meaning of the same. The Planters' Bank, we are informed by the record, was ousted of its franchises, and declared to have forfeited its charter in June, 1845. Other Mississippi banks, doubtless suffered the same fate about that time. The Act of 1846 was passed with reference to the state of things then existing in our contiguous sister States.

If the right spoken of in the Act of 1846 be any right growing out of the obligatory force of any contract or judgment, or if it be any other vested right, it is a thing guarded by the Constitutions of the United States and of this State, and the legislation was idle, because such *rights* could not be less nor greater here than at home. That the statute has reference to remedies, is more apparent from its phraseology, that in " *seeking to enforce the collection of debts* " such foreign bank shall not *exercise* any right which *it could not exercise* by virtue *of the laws* of the State in which such bank is situated. The thing prohibited is not then any *absolute right per se*, but the *exercise of a right* which *the laws at home* did not permit to be exercised. The *lapse of time required* by the statute of limita-

MANDEVILLE
v.
HUSTON.

tions at home would be a bar *by law* to the *exercise of a right* under a contract or a judgment. And, inasmuch as a bank could not *exercise* such right at home, it must follow, we think, that the Act of 1846 (among other things) prevents the exercise here.

The inquiry is then left, what remedy, if any, have the plaintiffs by the laws of Mississippi?

The judgments on their face appear to be barred by the 8th section of the statute of limitations of Mississippi, which bars the actions of *scire facias* and *debt* upon judgments by the lapse of seven years. Now, as the common law gives only two actions upon judgments, viz, *scire facias*, and debt, we cannot understand to what other action plaintiffs' counsel refer in the passage we have cited from their brief. 1 Chitty's Pleadings, 103. By the laws of Mississippi, *prima facie*, their clients stand in this position : they cannot take out execution, because the defendant, *Huston*, has departed this life, and an *action* must be brought to enforce the decree against his representatives. They cannot bring an *action*, because the only two actions which will lie upon judgments are barred by the statute of limitations.

The only question remaining to be considered is, whether there are any circumstances which will take the case out of the statute of limitation. We do not understand the doctrine of the interruption of prescription to be admitted at common law to the extent allowed by the civil law ; on the contrary, the maxim is that when the statute of limitation has once commenced to run, it never stops on account of any subsequent disability. 1 Bouvier's Inst., p. 338, sec. 865. By the eleventh section of the statute of limitations of Mississippi, an exception is made to the running of the statute in cases where a person against whom there is a cause of action, is out of the State where the action accrues, or goes out of the State subsequently. In such case, the time the debtor is absent is to be deducted. We are not advised whether, or not, the 11th section was intended by the lawgiver to apply to judgments. We will assume that it was so intended. It is held by the courts of Mississippi, that it is only the first absence of the debtor from the State at the accruing, or after the accruing of the action, which is to be deducted ; that so soon as the debtor returns, the statute recommences to run and continues to run on uninterruptedly until completed. No one visit of the testator to Louisiana in 1850 or 1851, could, therefore have defeated the statute. See *Ingraham & Read* v. *Bowie,* 4 George Miss. Rep., p. 20 ; see also *Vick* v. *Chewning's Heirs,* 2 George Miss. Rep., p. 201. In one of the chancery suits, the administrators of the estate of one *Burns,* a co-defendant, were made parties by *scire facias.* From the judgment rendered on the 3d day of July, 1850, they prosecuted a writ of error to the High Court of Errors and Appeals, on their own accounts. It was by mistake accompanied by a writ of *supersedeas* as to the whole case, instead of themselves alone. If the time which was apparently lost by the *supersedeas* be deducted, the seven years have not elapsed as to one of the judgments. The supposed *supersedeas,* however, cannot have any influence on the plea. The writ of error sued out was not intended to affect the rights of the other defendants, and could neither occasion the affirmance or reversal of the judgment as to them. The testimony of two members of the Mississippi bar on this point is explicit. They say : " The right of *Mandeville et al.* to execute their decree was not affected by the writ of error as against *Gen. Huston.*" It seems they could at any time have had the writ quashed. Their suffering it to stand was purely voluntary on their part. It does not appear to be a case excepted

from the operation of the statute of limitations. It did not, therefore, prevent the plaintiffs from bringing their actions of *debt* or *scire facias*, and was no legal impediment or bar to the same.

This view of the case makes it unnecessary to consider whether the taking out of letters testamentary in Louisiana is such a coming into the State, after the accruing of the statute of limitations, as to give the defendant a valid defence also under the Act of 1855.

In the case of *Walworth et al.* v. *Routh*, 14 An. 205, the Act of 1846 was neither pleaded nor relied upon in argument.

It is, therefore, ordered, adjudged and decreed by the court, that the judgment of the lower court be avoided and reversed ; and it is now ordered, adjudged and decreed by the court, that there be judgment in favor of the defendant, and against the demands of the plaintiffs, with the costs of both courts.

LAND, J., absent.