WOODWORTH *v.* ST. PAUL, M. & M. RY. Co.

*(Circuit Court, D. Minnesota.    October 10, 1883.)*

1. PERSONAL INJURY — NEGLIGENCE — CONTRIBUTORY NEGLIGENCE — DUTY OF RAILROAD COMPANIES TO EMPLOYES.

Railroad companies are not insurers of the life and limb of their employes, and the duty and obligation which the law exacts from a railroad company towards its employes is not as high as that towards its passengers. Ordinary care is the rule which is applied to a railroad company with regard to its duties towards its employes. Under this rule is the obligation to keep its machinery and all other things used in the operation of the road in proper order and repair, so that its employes will not be injured by reason of any defects in such machinery or working apparatus.

2. SAME—RISKS OF BUSINESS.

　An employe cannot recover for an injury resulting from one of the usual risks or hazards connected with the business into which he has entered, and which the law will consider he assumed when undertaking the duties of the position.

3. JURISDICTION—CHANGE OF RESIDENCE DEPENDENT UPON INTENTION.

　Whether a man has changed his residence from one state to another, so as to have become a citizen of the latter, must depend very largely upon his intention. The mere fact of a prolonged absence from one state, and continued residence in another while attending to business or pleasure, is not in itself enough to constitute a change of citizenship; it must appear that the person has left the former state with the intention of resigning his citizenship there. The fact that a man continues to vote in the state from which he came, and owns a farm there, tends to show that he is a citizen thereof.

At Law.

Plaintiff seeks to recover damages for an injury caused to him while in the employ of the defendant in coupling freight cars, on two grounds: *First,* that the draw-heads of the two cars that he was required to couple were of different makes and uneven as to height, which was unknown to this plaintiff, and which he was unable to see owing to the fact that the railroad iron with which one of said cars was loaded projected over the draw-bar so as to conceal the fact that it was of a different height from the other car; and, *secondly,* on the ground that after the plaintiff had given the proper signal to the engineer to move the cars together, the defendant's yard-master carelessly, and without warning this plaintiff, gave another sign to the engineer, by reason of which the cars were violently pushed together, and, owing to these two acts of carelessness on the part of defendant, the plaintiff was injured in attempting so to couple the cars. The defendant claims that the yard-master gave no such order, and, while admitting the fact that the draw-heads were of different heights, claims that this is usual and unavoidable, and that the cars could have been easily coupled by the plaintiff by the exercise of ordinary care.

*C. K. Davis,* for plaintiff.

*R. B. Galusha, Bigelow, Flandrau & Squires,* and *J. Kling,* for defendant.

SHIRAS, J., (*charging jury.*) There is a question, preliminary in its nature, as affecting the results of this case, upon which the court has been requested to instruct you, and which is fairly presented by the issue made in the pleadings, and that is in regard to the citizenship of the plaintiff. Under the law this court of the United States has jurisdiction only between citizens of different states, or between an alien and a citizen. If it should appear in the progress of the trial of this case that the plaintiff and defendant were at the time the action was brought citizens of the same state, then this court has no jurisdiction to try this case; and whatever verdict the jury might find and whatever judgment the court might pronounce would be void, for the reason that under the constitution of the United States the court would have no jurisdiction to hear and determine the case.

Therefore, to enable a party to maintain an action, it must appear, and it must be true, that the parties are citizens of different states, or one party must be an alien. In this particular case it is averred that Woodworth, the plaintiff, is a citizen of the state of Maine, and the defendant, the St. Paul, Minneapolis & Manitoba Railway Company, is a citizen of the state of Minnesota. Corporations are deemed, within the meaning of the law, to be citizens of the state wherein they are created, and there is no question in this case but that the defendant is a citizen of the state of Minnesota.

If it be true that when this action was brought the plaintiff was a citizen of the state of Minnesota, then this action cannot be maintained in this court. It would not defeat his remedy, but simply this court would not have jurisdiction, and he would have to bring this action in the state court. The question has been raised whether this plaintiff was not really a citizen of the state of Minnesota at the time that this action was brought. If you find from the evidence that he was a citizen of any state other than the state of Minnesota, then the action can be maintained, and the court has jurisdiction to hear and determine the controversy. Citizenship, so far as the state is concerned, is ordinarily determined by residence. In other words, residence is evidence of citizenship, but that must be taken with a qualification. A party may be a citizen, for instance, of the state of Minnesota. We have a right, any of us that are citizens of this state, to go to another state, take up our residence there, do business there, and remain there quite a length of time; still, if we go there with the intention of returning to the state of Minnesota, however long we may be gone,—weeks, months, or years,—we are still citizens of the state of Minnesota. A person may go round the world and travel, and reside in different places for some time, and still be a citizen of the state of Minnesota, provided he had a *bona fide* intention of coming back again. So a man may be a citizen of the state of Maine, and go to different places from time to time, wherever he can obtain work, and yet continue to be a citizen of the state of Maine.

The question really is, what intention the man had when he left his own state for the purpose of procuring work. When he leaves, is it with the intention of taking up a permanent residence in some other place, and abandoning his place of residence in the state he leaves, or is he still intending eventually to return there? To illustrate: those who are in the employ of the United States at Washington as department clerks go there for several years; they may be even commissioned for a given length of time, or for an indefinite time, still they continue ordinarily to remain citizens of the state from which they started, and they are supposed generally, when they leave their situations, to return to the state which they left.

The evidence of the plaintiff is before you, and that is all the evidence before you, with regard to his citizenship; it is for you to de-

termine whether, under the testimony, he was a citizen of the state of Maine when this action was commenced, and you will give such weight to his testimony with regard to that fact as you think it deserves.

You may also take into consideration in the determination of this question the fact of the plaintiff voting and his having a farm in the state of Maine. If it appears that a man does not vote here, but continues to vote in the state from which he came, has a farm there, and states he leaves it not with the intention of remaining away, all these are matters of evidence which tend to show that he remains a citizen of that state, and would justify you in finding that he is a citizen of the state from which he came. But, as a matter of law, if you find the fact to be that when this action was commenced this plaintiff was a citizen of the state of Minnesota, then this action cannot be maintained in this court, and it will be your duty to find upon that fact. If you find for the defendant upon this issue you should state in your verdict that you find for the defendant upon the question of the citizenship of the plaintiff, so that there may be no question in the future as to his right to bring an action in another court.

Passing this question,—which, as I said before, is preliminary, and does not affect the merits of the case,—if you find that the plaintiff was a citizen of the state of Maine a year ago, when this action was commenced, you will then pass to the other issues in the case, and upon them I will proceed to give you instructions as to the law that is applicable to them.

In this case the plaintiff, Woodworth, seeks to recover from the defendant damages for an injury which he alleges he suffered while in the employ of the company in the position of a brakeman or switchman in the yards of the defendant corporation. There is no conflict upon these questions, and it is admitted on both sides that the plaintiff was in the employ of the railroad company, and while there in the ordinary line of his duty he undertook to make a coupling between two cars, and while doing so he received this injury. There is no dispute upon this fact; the question in issue is as to the liability, and upon whom the responsibility for this accident was. Now, it is not sufficient for the plaintiff to show that there was an accident, and, as the result of that, an injury was inflicted upon him, because these railroad companies are not insurers of the life and limb of their employes. The duty and obligation which the law exacts from railroad companies towards its employes is not as high as that towards its passengers; they being common carriers, the law imposes a very high degree of care in the carriage of passengers, and makes them almost insurers of the safety of their passengers. But in regard to employes a different rule of care is applicable from that which is held towards passengers.

In the case of employes there is exacted from the railway company

that the company, through its agents, shall exercise ordinary care, and that is defined to be that amount of care that an ordinarily prudent man would exercise under the same circumstances. Of course, the amount of care varies with the circumstances that surround the object and the party. Therefore you must apply this rule with regard to the circumstances that surround the parties when called upon to act. Now, the law requires of these railroad companies that they should use proper and suitable machinery and apparatus, and that the cars that their employes are required to work upon should be kept in good order. That is a duty which the railroad company owes to its employes. Still accidents will happen; something may get out of order; and if the employe knows of this, and yet deals with the machinery so out of order, he deals with it knowingly and understandingly, and is not misled. Still a railroad company should keep its machinery in good order, so as not to cause risk to the employe. But the plaintiff cannot recover by simply showing that there was an accident and an injury. He must go further, and show that the accident of which he complains resulted from some negligence on the part of the company; that the company did not discharge its duties towards him; that there was some negligence or fault on the part of the company.

If it appears from the evidence in the case that the plaintiff received the injury by negligence on his part, then that defeats his right of recovery. The rule of law upon that is that, though you should find that the accident was caused by or resulted from negligence on the part of the railroad company, still, if the plaintiff contributed to the accident, so that the accident was caused partly by his negligence, then the plaintiff cannot recover. If he, by his own negligence, contributed to or aided in the accident, he cannot complain of the other party and is without remedy.

When a person enters into the employ of the railroad company, he assumes all the usual risks and hazards pertaining to the business of railroading properly conducted. That is the general rule applicable not only to railroad companies, but also to all employes. Some businesses are more hazardous than others; from their very nature that cannot be prevented,—there is more risk attached to them; and an employe or person who chooses to enter into such employment, assumes the risks and hazards of the business when properly carried on; and if he is injured in one of these ordinary risks or hazards pertaining to the business, he is without remedy; it is one of the risks he has assumed, and he cannot recover if he is injured thereby.

Coming down, now, to this case as it is presented before you, the plaintiff seeks to recover on two grounds. He claims, first, that the draw-heads on these cars were uneven, and were dangerous by reason of that fact, and therefore that the coupling together of these cars was rendered dangerous by reason of the fact that these draw-heads were uneven.

As I have already stated in a general way, the duty is upon the railroad company to keep its machinery—that is, its cars, and machinery that are used in the operation of the railroad—in proper order; and if these draw-heads, or anything that is used in coupling cars, gets out of order, or are in bad order, that is the fault, ordinarily, of the railroad company, because the duty and obligation lies upon the railroad company to use due care, and see that they are kept in good order. It is their duty to repair them, and to keep them in repair, and if they neglect to do so there is a fault on the part of the railroad company. And when it appears that the draw-heads are out of order, and an employe is injured by reason thereof, he would have a cause of action against the company, if they are shown to be in fault. But in this particular case there is no evidence to show, and it is not claimed, that the draw-heads themselves were in bad order, or were in bad condition. The difficulty that arises here is not from the bad condition of the draw-heads, but from the fact that draw-heads of different makes and styles are brought together at the time of making the coupling to couple the cars together. There is no evidence that the draw-heads were in bad order, and the company cannot be said to be in fault in this case on account of the draw-heads being in bad order; so that if any responsibility is upon the company it must be drawn from another source.

That brings us to the consideration of whether the company can require an employe to couple cars where the draw-heads are of different make, style, and construction.

The uncontradicted evidence shows that, from the very business this company carries on, they receive, and expect to receive, and their custom is to receive, and they are in fact bound to receive, these cars that are brought over connecting roads. We all know it to be the fact, and circumstances and the evidence show that all these railroad companies are more or less expected to receive, and do receive, cars from all the different lines of the country, and it follows, and is one of the necessities of the business, that these cars should be brought together and coupled, though having upon them draw-heads of different makes and construction. An attempt to enforce any other rule would require and compel every railroad company in the United States to have just one make of draw-head. It would be impossible to do that, and I instruct you, therefore, that in this case negligence could not be predicated and found by you to exist against this railroad company simply and solely from the one fact that these cars had different draw-heads upon them. The uncontradicted evidence that is before you shows that the men that go into this business of switchmen and brakemen expect and know that they will be required every day to discharge their duties in coupling and uncoupling cars with different draw-heads, both in the day-time and in the night-time. It is from the very necessity of the case that these cars are brought together in the yards of the company, and are coupled together there,

that this result must follow. I therefore instruct you that that fact, that these cars had 'different bumpers, of different makes and shapes, even though they did not match,—that fact alone would not constitute negligence in the company.

Some stress has been laid upon the fact that there are inspectors; but you see it would be impossible to change this fact; that would require them to change the very make of the car, and that is not done upon any railroad, as far as the evidence goes, and I don't think that obligation is laid upon a railroad company. A railroad company has a right to make connections with its cars with other cars of different makes; and although that may impose a greater risk and a greater hazard upon the employe of the company, still it is one of the risks that pertain to the business, as it is generally carried on, and it is a risk and a hazard which the employes themselves assume when they undertake the business.

It is further claimed that there is a liability on the part of the railroad company, on the ground that Jarvis, the yard-master, negligently gave an order and instruction to the engineer to back the train and accelerate its speed at the time when the plaintiff was in the act of undertaking to make the coupling between these two cars.

Now, the first question for you to determine is whether or not the yard-master, Jarvis, gave any orders to control the movement of the cars at the time of the accident. Did he, by any order or communication, either by signal or word of mouth, or by both combined, give any orders to the engineer controlling the movements of that train or engine with cars attached? If he did not do that, then no negligence can be predicated against the company by reason of the acts of Jarvis. If he gave no orders, then he was not in fault, and if he was not in fault the company was not in fault. If he did give any orders to the engineer, was he wanting in the exercise of due care when he gave these orders? That is to say, was he wanting in the care that an ordinarily prudent man would exercise under the same circumstances? Here you will have to consider the position the plaintiff occupied in coupling these cars, and what the testimony shows is the ordinary rule and way in which these couplings are made. There has been testimony introduced to show that when these couplings are made the brakeman is required to go between the cars to couple them, and is ordinarily required to give signals to control the movements of the engine, and to instruct the engineer at what speed to approach the cars. If it be true that the plaintiff, as a brakeman, gave the signal to the engineer which he deemed to be proper, and directed the engineer how he, the brakeman, desired to have the cars moved, when they came up to make this coupling, and then after giving this signal the brakeman passed between the cars, so that he might make the coupling, or attempt to make it, then you will determine whether any action which Jarvis took affected injuriously the movement of these cars, so that the plaintiff was a sufferer

thereby. Then, under these circumstances, I would charge you that Jarvis, although he was the yard-master, and a superior officer to this plaintiff as a brakeman, would have no right to give any order or direction, or to change the previous order that had been given by the brakeman, so as to subject the brakeman, without any knowledge on his part, to any additional risk. The yard-master might give orders undoubtedly, if he saw there was any supervening necessity therefor. The yard-master was standing there with supervisory power; and if the yard-master saw there was reason, he might give the order, and he would have a right to give the order. Any brakeman would have a right to warn the engineer of danger, because that is a sudden emergency in which he may act. But when he exercises that power he must be careful that he does no act which is negligent in its character. In other words, a brakeman may direct the engineer to move up to make a coupling in a proper manner, and if the yard-master then gives an order which the engineer obeys, and which results in sending back the cars with such greater power and force that it thereby imperils the life of a brakeman, that would be negligence which would justify you in finding that the yard-master was negligent in giving such an order as that.

That was only an illustration, and not meant to intimate any facts in this case. I am endeavoring to instruct you upon what my idea of the law is that is applicable in this case. The yard-master must not unnecessarily interfere with the movements of a train when a brakeman, having given an order, has gone between the cars, and when he has a right to suppose that the engineer will follow out the instructions that he has given him. What do you find the facts to be in this case? Did the plaintiff, before he went between the cars to make that coupling, give the order and direction to the engineer how he wanted the train of cars to be moved? If he did, and then passed in between the cars to make the coupling, he had a right to suppose that the train would be moved up in obedience to his orders, and that there would be no change therefrom. If the yard-master saw that it was absolutely necessary to change that order, he might do so, having regard to the safety of the brakeman who was between the cars. Now, then, what order did Jarvis give? It is for you to determine what order, if any, he gave; and you are to determine what, if any, effect that order had upon the movements of the train, if you find from the evidence he gave any orders.

If you find from the evidence that that order was obeyed by the engineer, but that it did not increase the risk,—did not contribute towards this accident,—then there is no complaint to be made against the company. Jervis, in that case, was not in fault, unless the true reason of the causing of the accident was his order to the engineer. If that did not cause the accident no responsibility can be placed upon the company therefor. But if you find from the evidence that he

v.18,no.5--19

gave an order, which order, under the circumstances, he was not justified in giving, with exercise of due care on his part, and that order resulted in accelerating the motion of the train, and thereby rendered the business of the brakeman more hazardous, and resulted in causing the accident to the plaintiff, then you would be justified in finding that the company was responsible for the injury which resulted to this plaintiff under these circumstances. But if you find that Jarvis gave no orders but what he was justified in giving under the circumstances, or if he gave no order at all, or if you find that what he did give had no effect upon the accident, then your verdict should be for the defendant.

There is another principle you must bear in mind. If it appears from the evidence—it is a matter of defense in a case of this kind—if it appears from the evidence that the plaintiff himself had been guilty of negligence that contributed to the accident, that is a matter of defense, and ordinarily it is for the defendant to make out their defense from their own testimony, but in a case of this kind their defense of contributory negligence may be made out from the testimony of the plaintiff; but, as far as your duty is concerned, it is for you to determine, from all of the evidence in the case, no matter which side may produce it, and answer this question, did the plaintiff contribute to or cause this accident through any fault or negligence on his part? If he did, then he cannot recover, because if it happened by any of his own negligence he cannot maintain this action. If he did not, and no want of care on his part contributed to or caused the injury, so that he was in the exercise of due care, then his right of action would not be defeated. The evidence has been before you showing exactly what was done during the making of this coupling, the position that the plaintiff occupied, and how the plaintiff undertook to make this coupling. The evidence has been before you showing you the usual and proper way in which couplings of this kind are made. It is for you to say whether the mode of this coupling, the way in which it was made, was with the exercise of due care on the part of the plaintiff. It is for you to determine whether or no the plaintiff has been guilty of the want of due care upon his part in the performance of that duty; and if you think he has, then he cannot recover. But if he has not, then, if you find the other issues in his favor, he would be entitled to a verdict at your hands. If you find in favor of the defendant, then you have nothing more to do than simply to say, we, the jury, find for the defendant. If you find in favor of the plaintiff, then you will be required to estimate the amount of damages to which he is entitled. In the first place, the damages to which the plaintiff would be entitled is a reasonable compensation for the pecuniary loss he has suffered. It is pecuniary compensation you make to him for the loss that has arisen to him by reason of this accident.

One element of damage you may take into consideration, under

the evidence, in this case, is a reasonable compensation for the pain he has suffered in the past, and may suffer in the future. Then, also, the loss of time, when, by reason of the wounds he received, he was unable to earn anything, and the time he lost when he was having himself properly cared for; a reasonable compensation is to be made to him for that. And then the injury to his hand, and the loss of his fingers, and the consequent effect upon his ability to labor. Of course, it is uncontradicted that the result of this accident to the plaintiff was the loss of two of his fingers; and he is therefore entitled to be compensated for the loss of bodily strength, and the loss of his ability to labor in whatever business he may engage in; and the question for you to determine is, what a fair and just compensation for that would be. Of course, it is impossible for the law to lay down any fixed rule that is to govern you in awarding a sum in this case. It is necessarily left to the sound discretion of the jury to fix such reasonable sum as they believe will compensate the plaintiff for the injury he may have received; and in cases of this kind the damages are to be determined without any reference to the character of the defendant. The injury to the plaintiff is no greater by reason of the fact that the defendant is a railroad company, than if he suffered it at the hands of a farmer upon his farm. The injury to him and his is just the same, and it makes no difference that the defendant is a corporation, and you should not allow that fact to have any effect upon your minds as to the issues between the parties, or as to the amount of the damage, if you come as far as that question. The plaintiff is entitled in all cases to a fair compensation for the injuries he has received. They are not to be lessened nor increased by reason of the fact that the defendant is a railroad corporation. You are to decide this case as though it was an action pending between two individuals.

I believe that is all that is necessary to instruct you with regard to the law of the case.

The jury returned a verdict for the plaintiff for $1,000.

See *Holland* v. *Chicago, M. & St. P. R. Co.*, *ante*, 243, and references, 249.