GADDIE v. MANN et al.

(Circuit Court, S. D. Georgia, W. D. August 31, 1906.)

1. COURTS—JURISDICTION OF FEDERAL COURT—BURDEN OF PROOF ON ISSUE.

Where a bill in a federal court properly alleges the requisite jurisdictional facts, the burden is on the defendant both to allege and prove to a legal certainty the facts relied on to defeat the jurisdiction, and, where he alleges a change of complainant's domicile, he must show both residence in the new locality and the intention to remain there.

2. SAME—CITIZENSHIP OF COMPLAINANT—EVIDENCE.

Where a complainant alleged in his bill in a federal court that he was a citizen of North Carolina, and it is shown without contradiction that he is a native of that state, that his home where his wife and family reside is and has always been there, that he visits them frequently and has always voted there in national elections, the presumption of his citizenship in that state arising from such allegation and facts is not overcome by evidence that for several years he has been for a large part of the time in Georgia, where the suit is brought, in connection with his business there in different places, that he took part in a political meeting there as member of a local committee, or that on one occasion he registered and voted there at a party primary; especially in view of the Georgia statute, which apparently requires only residence and the payment of taxes to entitle any citizen of the United States to vote.

3. SAME—MANNER OF RAISING ISSUE.

It is the better practice to determine the question of the jurisdiction of a federal court arising upon a denial of plaintiff's allegation of citizenship on an issue taken by plea, with opportunity to both parties to adduce evidence in the regular way, rather than on motion and ex parte affidavits.

In Equity. On motion to dismiss for want of jurisdiction.

Hall & Wimberly, for complainant.

A. L. Miller, for defendants.

SPEER, District Judge. This question arises on a motion made by one of the defendants, under section 5 of the judiciary act of 1875 (Act March 3, 1875, c. 137, 18 Stat. 472 [U. S. Comp. St. 1901, p. 511]), to dismiss the bill for want of diversity of citizenship, on the ground that the complainant is not a citizen of North Carolina, as alleged, but a citizen of Georgia.

Evidence in the form of affidavits has been introduced to show that he is a citizen of Irwin county in this state; that, in November, 1905, he registered as a voter for the Democratic White primary in that county, in which it is claimed that he subsequently voted; and that, some years prior to the bringing of this bill, he returned in that county a small amount of property for taxes. In reply, the complainant has produced certain affidavits to the effect that he has always been a citizen of North Carolina, where he has long maintained a home and his wife and children, regularly remitting to the latter money and supplies, and returning to his home several times in each year; that he is a temporary sojourner in Georgia on account of business interests which he claims to be of transient nature, not confined to one, but extending to many counties; that he has merely boarded where business exigencies required, has never had a home or office in this state, and possesses no property in Irwin county; and that he has

never renounced his citizenship in his native state, but has always returned there to vote in each national election.

Now, it is settled that, where a domicile is once shown to have been established, it is presumed to continue until it is clearly shown to have been abandoned. Mitchell v. U. S., 21 Wall. 353, 22 L. Ed. 584; 24 Am. & E. Enc. of Law, 698. The rule is clearly stated that the domicile of a married man is presumed to be at the place where his wife or family resides. 14 Cyc. 861. And the presumption also exists that a man is a citizen of his native state until it can be shown that he has acquired citizenship elsewhere. Coxe v. Gulick, 10 N. J. Law, 328; 7 Cyc. 147. Where a bill properly alleges the requisite jurisdictional facts, the burden is on the defendant both to allege and prove the facts relied on to defeat the jurisdiction. Wiemer v. Louisville Water Company (C. C.) 130 Fed. 244, citing 1 Bates' Federal Practice, 252. It is important to observe that under Act March 3, 1875, c. 137, 18 Stat. 470, U. S. Comp. St. 1901, p. 508, the defendant must show by proof to a "legal certainty that the suit does not really and substantially involve a dispute or controversy within the jurisdiction of the court." Chambers v. Prince (C. C.) 75 Fed. 180. In the case of Prentiss v. Brennan, 2 Blatchf. 162, Fed. Cas. No. 11,-385, the principle is announced that a fixed and permanent residence or domicile in a state is essential to the character of citizenship that will bring the case within the jurisdiction of the federal courts. Mere residence may be for a transient purpose, as for business, for a fixed period, or limited by an expected future event upon the happening of which there is a purpose to return or remove. But the two elements of residence and the intention that such residence shall be permanent must concur to make citizenship. Marks v. Marks (C. C.) 75 Fed. 325. Said the Supreme Court of the United States, in Mitchell v. U. S., supra:

"Where a change of domicile is alleged, the burden of proving it rests upon the person making the allegation. To constitute the new domicile two things are indispensable: First, residence in the new locality; and, second, the intention to remain there. The change cannot be made except facto et animo. Both are alike necessary. Either without the other is insufficient. Mere absence from a fixed home, however long continued, cannot work the change. There must be the animus to change the prior domicile for another. Until the new one is acquired, the old one remains. These principles are axiomatic in the law upon the subject"—citing Wharton's Conflict of Laws, § 55.

The affidavits offered in support of the motion, and against it, are fairly in conflict as to the intention of the complainant to avail himself of the privileges and prerogatives of a resident of this state. He asseverates under oath and with great earnestness that he never meant to change his home from North Carolina to Georgia. It is undeniable that the only home he had was in North Carolina. His sworn testimony that his wife and children lived there, that he there supported them, that he returned to visit them at frequent intervals, that he voted there in national elections, is not in dispute. He is an expert in dealing with timber lands, and his occupation carried him to many counties in Georgia. He roomed with different men, as a man in his occupation might well have done; but it does not appear that he made

any effort to break up his home in North Carolina and establish it in Georgia. The principal contention made in support of the motion is that he voted in a certain Democratic White primary; that he was a member of the reception committee for one of the candidates for Governor in the alleged Democratic White primary which is now pending; that he was seen and heard on the "platform, hollowing" for his candidate, and declaring his unalterable devotion to the fortunes of that statesman; and that on the 19th day of March, of last year, he registered for a pending Democratic White primary, and took the following oath of a voter:

"I do solemnly swear that I am a citizen of the United States; that I have resided in the state of Georgia one year; in the county of Irwin six months; in the city of Fitzgerald six months; in the Third ward of said city thirty days. I have paid all taxes which have been required of me by the laws of Georgia since the adoption of the Constitution of the state."

These facts, it is insisted, are conclusive of the contention that the complainant is a citizen of Georgia. I pretermit at present the interesting inquiry whether a Democratic White primary constitutes an election, or voting thereat, the exercise of suffrage authorized by any valid law of the state, or of the United States, which a national court must regard as of any significance in a legal sense. But it is said that he voted in Georgia at an election clearly authorized by law. It seems, however, that voting at a lawful election in a particular state has been by many courts deemed as inconclusive of domicile or citizenship there.

It is true that in Shelton v. Tiffin, 6 How. 185, 12 L. Ed. 387, Mr. Justice McLean said that, on a change of domicile from one state to another, "an exercise of the right of suffrage is conclusive on the subject"; but the learned associate justice disclosed in his opinion that there was no proof that the party ever voted in any election in Louisiana, and this subject of suffrage, not being before the court for decision, the language quoted is merely a dictum. To the contrary, while recognizing the fact of suffrage as an important factor in determining the question, many authorities are to the effect that it is not conclusive. Woodworth v. St. Paul (C. C.) 18 Fed. 282; Easterly v. Goodwin, 35 Conn. 279, 95 Am. Dec. 237; Enfield v. Ellington, 67 Conn. 459, 34 Atl. 818; Smith v. Croom, 7 Fla. 81; 10 Am. & E. Enc. of Law, 24. Strongly to the same effect was the Louisiana case of Mandeville v. Huston, 15 La. Ann. 281. It was there held that the fact that a person had voted in that state, and had even become a candidate for the Legislature, was not sufficient to show a change of domicile from another state, where it was shown that he never made a permanent change in his residence.

In view of the fact that it has not been shown that the complainant ever relinquished his domicile in his native state; that he has always maintained a family and home there, which he has continuously visited, voting there in all national elections; and that his sojourn in Georgia appears to have been solely for business purposes—the court is of the opinion that, even conceding to the evidence contained in the affidavits of the defendant its fullest effect, the presumption that the complainant is a citizen of North Carolina is not overcome by the fact

that he merely once voted in a local primary to nominate candidates of a single political party, or a local election, or that he was on "an invitation committee," or that he "sat upon the stand" from which the candidate spoke, or that he was "whooping and hollowing" on that edifying occasion. It is, moreover, at least questionable whether the exercise of the right of suffrage in the state of Georgia by one who has a home elsewhere is very significant to show such a change of domicile and citizenship as will deprive a suitor, who would be otherwise entitled, of his right to pursue his remedies in the courts of the United States. Here residence and the payment of taxes seem to bestow the elector's privilege. The distinction between residence and citizenship is well known, and the relating clause in the Constitution of Georgia is silent as to citizenship. This is found in section 5737 of the Code, as follows:

"Every male citizen of the United States (except as hereinafter provided), twenty-one years of age, who shall have resided in this state one year next preceding the election, and shall have resided six months in the county in which he offers to vote, and shall have paid all taxes which may hereafter be required of him, and which he may have had the opportunity of paying, agreeably to law, except for the year of the election, shall be deemed an elector: Provided, that no soldier, sailor or marine in the military or naval service of the United States, shall acquire the rights of an elector by reason of being stationed on duty in this state; and no person sholl vote who, if challenged, shall refuse to take the following oath, or affirmation: 'I do swear (or affirm) that I am twenty-one years of age, have resided in this state one year, and in this county six months, next preceding this election. I have paid all taxes which, since the adoption of the present Constitution of this state, have been required of me previous to this year, and which I have had the opportunity to pay, and I have not voted at this election.'"

Besides, on the whole, it is the better practice to determine an issue of this character upon the proofs, and not upon ex parte affidavits. It is true that some of the courts have received such affidavits, but others have required proof with opportunities for the examination and cross-examination of witnesses. An illustration of the superiority of the latter method will be seen in this case. Counsel for the complainant was deeply absorbed in another trial when this motion was made. In response to an urgent appeal by counsel making the motion, it was perhaps improvidently assigned two days after it was made. A very earnest complaint was made that complainant's counsel did not have the opportunity to put the evidence in his client's behalf before the court. A similar case was that of Kilgore v. Norman (C. C.) 119 Fed. 1008. There this court held:

"Evidence in the form of affidavits has been produced to show that two of the complainants were residents of this state, and, since they are necessary parties to the bill, it is contended that the relief sought must be denied for want of jurisdiction. Prima facie the court has jurisdiction, because the sworn averments of the bill set out the essential jurisdictional facts. * * * There is before us the testimony of the complainant and the testimony of her relatives that she had, in point of fact, in good faith removed to Alabama, and lives there now. The witnesses on whom the respondents rely to defeat jurisdiction have not been subjected to cross-examination. * * * This question ought to be determined on full proof, when the parties have had the right to examine and cross-examine the witnesses to establish the necessary and essential facts. * * *"

It is true that in Morris v. Gilmer, 129 U. S. 315, 9 Sup. Ct. 289, 32 L. Ed. 690, it was held error not to dismiss upon motion a suit brought where the proper diversity of citizenship did not exist, but the court stated that this appeared from the evidence in the record, and, while certain affidavits were offered, it appears from the statement of the case that a lengthy deposition was taken with direct, cross, and redirect examination. Besides, Justice Harlan, in rendering the opinion, referred, on page 327, of 129 U. S., page 292 of 9 Sup. Ct. (32 L. Ed. 690), to the action of the court in Hartog v. Memory, 116 U. S. 588, 6 Sup. Ct. 521, 29 L. Ed. 725, where it is recited that in that case, after verdict, "the court summarily dismissed the action upon the ground solely for want of jurisdiction, without offering the complainant any opportunity whatever to reply or control the evidence on the question of jurisdiction." The learned justice continues:

"The failure, under the peculiar circumstances disclosed in that case, to give such opportunity, was, itself, sufficient to justify a reversal of the order dismissing the action, and what was said that was irrelevant to the determination of that question was unnecessary to the decision and cannot be regarded as authoritative."

Now, in this case, neither party has had the opportunity to offer evidence, and it seems that the question of jurisdiction ought to be determined in the orderly procedure by plea, with the amplest opportunity to both parties to adduce evidence. In the language of Mr. Justice Matthews, in Barry v. Edmunds, 116 U. S. 559, 6 Sup. Ct. 506, 29 L. Ed. 729:

"It might happen that the judge on the trial or hearing of a case would receive impressions amounting to a moral certainty that it does not really and substantially involve a dispute or controversy within the jurisdiction of the court, but upon such personal conviction, however strong, he would not be at liberty to act, unless the facts upon which the persuasion is based, when made distinctly to appear on the record, create a legal certainty of the conclusions based on them. Nothing less than this is meant by the statute when it provides that the failure of its provision on this account 'shall appear to the satisfaction of said Circuit Court.'"

An additional ground to defeat jurisdiction is the contention that one of the codefendants named in the bill is under its allegations an indispensable co-complainant; the alleged cause of action not being separable. The court, as at present advised, is, however, of the opinion that, this being a partnership bill under its allegations, the arrangement of parties is proper for the relief prayed, regardless of the incidental benefit which might accrue to this codefendant from the litigation. Besides, this question is gathered from the face of the bill, and may be raised by demurrer.

Conflicting as the record stands, with inadequate proof, the complainant certainly should not be thus summarily deprived of his right to invoke the powers of this court, and the motion to dismiss the bill is therefore denied.