In the Matter of the Accounting of ELIZABETH P. DE G. JAMES, as Executrix of AMEDEE DE G. JAMES, Deceased, Respondent.

GEORGE W. P. DE G. JAMES et al., Appellants.

Decedent's estate — legal community under the law of France — establishment — domicile — election and estoppel applicable to property rights governed by French Code — when widow estopped from claiming legal community in her husband's estate.

1. The French Civil Code relating to legal community provides that it "is established by the simple declarations that the persons marry under the system of community, or by the non-existence of a contract." The domicile of origin is, however, presumed to continue until a new one is acquired and the intent to change the domicile especially where such change is to a foreign country must be established, and if a widow claims legal community under the French Code it is her duty under such Code to proceed promptly as therein provided to liquidate the community.

2. Assuming, but not deciding, that the provisions of the French Civil Code relating to legal community are applicable to subjects of the United States who have married in this country, their applicability can be modified or derogated by special stipulation. A widow in conjunction with her children may elect to waive any claim under such Code and take under the will of her husband and thereby become bound to carry out the terms thereof and the intent and purpose of the testator.

3. Testator, a citizen of this state, who married in this country, resided and died in France. By his will he left certain property situate in Europe to his wife, and certain property situate in America to his children, appointing his wife executrix. The will itself does not recognize legal community as existing between the husband and wife. In a proceeding in a French court instituted by the executrix for the delivery to her of the legacies as therein provided, all the parties in interest were represented by counsel and expressly submitted their rights to the court; the children of the testator refrained from claiming certain of their rights under the law of France, and the mother refrained from claiming her right of legal community under that law. The judgment of the court was that the will should be executed according to its form and tenor. Thereafter the will was filed in a Surrogate's Court of this state and ancillary letters testamentary granted to the executrix, and in various proceedings and actions in this and another state the executrix alleged and admitted that the American property was owned by the testator at the time of his death, who, though a resident of France, had never been legally domiciled there, and that the principal as well as the income of said property was bequeathed to and belonged to her children. In her account in the present proceeding there was no suggestion in any way that the American estate was not wholly held by her in trust for the testator's children and certain grandchildren, nor was there any claim on the part of the executrix for legal community under the French law until after the proceeding had been pending for two years, nor did she submit evidence that raised a question of fact in support of her claim of legal community. *Held*, that the law of France, so far as it relates to this case, was determined by its court, and that determination should not at this late day be repudiated. That the proceedings and judgment in France, together with the proceedings in this country, and allegations and admissions of the executrix, and the conceded and undisputed evidence taken herein, are so wholly inconsistent with any claim on her part for legal community under the French Code in antagonism to the simple terms of her husband's will as to have required a decree by the Surrogate's Court against her contention.

*Matter of James*, 172 App. Div. 800, reversed.

(Argued April 25, 1917; decided July 11, 1917.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the third judicial

department, entered July 7, 1916, which reversed a decree of the Ulster County Surrogate's Court judicially settling the accounts of the executrix of Amedee de G. James, deceased.

The following questions were certified: " (1) Did the judgment of the French court and the proceedings of the appellant thereunder estop the appellant from claiming an interest in the American property of the testator under the French law of community ?

" (2) Is the appellant estopped by her petition, answer, account and stipulations, and the conduct of the proceedings in the Surrogate's Court, from now claiming any interest in the American estate ?

" (3) Upon the entire record herein, can the French law of community apply to the matrimonial property rights of the testator and the appellant ?

" (4) Has the Appellate Division power upon this record to direct that an open commission issue to take testimony in France ? "

The facts, so far as material, are stated in the opinion.

*J. Noble Hayes* for George W. P. de G. James et al., appellants. The executrix's present claim to share in the American estate is entirely at variance with her pleading, account and proceedings in the Surrogate's Court and the theory as well as the evidence upon which the case was tried and disposed of. (*Southwick* v. *First Nat. Bank*, 84 N. Y. 420; *Bradshaw* v. *Mut. L. Ins. Co.*, 205 N. Y. 474; *Gordon* v. *Ellenville R. R. Co.*, 195 N. Y. 141; 119 App. Div. 801; *Northam* v. *Dutchess Co. Ins. Co.*, 177 N. Y. 75; *Brightson* v. *Claflin Co.*, 180 N. Y. 76; *Reed* v. *McConnell*, 133 N. Y. 425; *Freeman* v. *Grant*, 132 N. Y. 29; *Truesdell* v. *Sarles*, 104 N. Y. 167; *Huie* v. *Devore*, 138 App. Div. 679; *Scott* v. *Int. Paper Co.*, 125 App. Div. 322; *Cannon* v. *Fargo*, 138 App. Div. 24; *Rosenfeld* v. *Cent. Vt. R. R. Co.*, 111 App. Div. 374; *Scheu* v. *Union Ry. Co.*, 112 App. Div.

240; *Snider* v. *Snider*, 160 N. Y. 151.) The executrix
is clearly estopped by her proceedings in the French
court upon the will after its probate, and the judgment
rendered therein, and her subsequent acceptance of its
benefits and its full recognition for many years from now
claiming any interest in the American estate. (*Hilton*
v. *Guyot*, 159 U. S. 163; *Flatauer* v. *Loser*, 211 N. Y.
15; *Bolton* v. *Schriever*, 135 N. Y. 65; *O'Donoghue* v.
*Boies*, 159 N. Y. 87; *Haack* v. *Weicken*, 118 N. Y. 75;
*Beetson* v. *Stoops*, 186 N. Y. 463; *Walker* v. *Taylor*, 15
App. Div. 457; *Shanley* v. *Shanley*, 22 App. Div. 378;
*Chipman* v. *Montgomery*, 63 N. Y. 221; *Matter of Marx*,
117 App. Div. 890; *Birmingham* v. *Kerwan*, 2 Sch. &
Lef. 444; *Stokes* v. *Foote*, 172 N. Y. 324.) The French
law of community has no application, either presumptive
or otherwise, to the estate of the testator, Amedee de
Gasquet James. (*Matter of Majot*, 199 N. Y. 29.)

*Howard Chipp* for Hereward von der Decken et al.,
appellants. There is nothing in the record to indicate
that the French community law applied to the testator
or his wife. On the contrary, the record conclusively
demonstrates the non-application of that law. (*Dupuy*
v. *Wurts*, 53 N. Y. 556; *Matter of Newcomb*, 192 N. Y.
238; *Hamilton* v. *Erie R. R. Co.*, 219 N. Y. 343.) Even
were the community system applicable, the widow and
executrix may not now take advantage of it as she is
estopped both by judgment and *in pais*. (*Leonard* v.
*Crommelin*, 1 Edw. Ch. 206; *Chipman* v. *Montgomery*,
63 N. Y. 221; *Havens* v. *Sackett*, 15 N. Y. 365; *Thellur-
son* v. *Woodford*, 13 Ves. 209; *Matter of Hull*, 109
App. Div. 248; *Matter of Ullmann*, 137 N. Y. 403;
*Ostrander* v. *Hart*, 130 N. Y. 412; *Bell* v. *Merrifield*,
109 N. Y. 202; *Doty* v. *Brown*, 4 N. Y. 71; *Newton* v.
*Hook*, 48 N. Y. 676.) Under the pleadings and proceed-
ings in the accounting and the issues raised therein, the
widow and executrix is estopped from making any claim

herein to any part of the testator's estate in America, which is the subject of the accounting. (*R. E. Bank v. Eames*, 2 Abb. Ct. App. Dec. 83; *Walrath v. H. Ins. Co.*, 216 N. Y. 220; *Canton Brick Co. v. Howlett*, 169 N. Y. 293.)

*Howard Thayer Kingsbury* for Victoire L. de Libran, appellant. By her pleadings, account and proceedings herein the executrix is estopped to set up any claim on any ground whatever to any individual interest in the American estate of the testator included in her account. (*Brightson v. Claflin Co.*, 180 N. Y. 76; *Gordon v. Ellenville & Kingston R. R. Co.*, 119 App. Div. 797; 195 N. Y. 137; *Snider v. Snider*, 160 N. Y. 151; *Garvey v. McClure*, 3 Redf. 313.) By the French judgment of March 19, 1904, and her proceedings thereunder in taking possession of the European estate of the testator, the executrix is estopped to set up any claim to a community interest in the testator's estate. (*Havens v. Sackett*, 15 N. Y. 365; *Chipman v. Montgomery*, 63 N. Y. 221; *Matter of Marx*, 117 App. Div. 890.) From the undisputed facts shown by the entire record, and independent of the question of estoppel, it follows as a necessary conclusion of law that the French law of community cannot apply to the property rights of the testator and the executrix, and the remission of the case to the Surrogate's Court for a trial of this question was manifest error. (*Cole v. Executors*, 7 Martin [N. S.], 41.)

*Charles S. Aronstam* and *C. A. H. Bartlett* for respondent. The respondent is not estopped by her petition, answer, account and stipulations and the conduct of the proceedings in the Surrogate's Court from now claiming any interest in the American estate. (*Sly v. Hunt*, 159 Mass. 151.) The French law of community applies to the matrimonial property rights of the testator and the respondent. (Wharton on Conflict of Laws, 118, 123,

133a; *Bonati* v. *Welsch*, 24 N. Y. 157.) The matrimonial property rights of the spouses should be determined by the courts of this state. according to the law of France, as they were both domiciled there at the decedent's death. (*Matter of Hughes*, 95 N. Y. 60; *Matter of Majot*, 199 N. Y. 29; *Matter of Cruger*, 36 Misc. Rep. 477; *N. Y. Life Ins. & Trust Co.* v. *Viele*, 161 N. Y. 19; *Chamberlain* v. *Chamberlain*, 43 N. Y. 424; *Cross* v. *U. S. Trust Co.*, 131 N. Y. 330; *Matter of Dunn*, 39 App. Div. 510; *Matter of Hernandez*, 172 App. Div. 467; *Matter of Newcomb*, 192 N. Y. 238.) In the absence of a contract the property rights existing between the spouses and relative to each other are to be determined according to the law of their matrimonial domicile. (*Matter of Majot*, 199 N. Y. 29; *Graham* v. *First Nat. Bank, Norfolk*, 84 N. Y. 393; Wharton on Conflict of Laws, §§ 118, 121, 331a; *Le Breton* v. *Miles*, 8 Paige, 261; *Parsons* v. *Lyman*, 20 N. Y. 112; *Hoyt* v. *Commissioners of Taxes*, 23 N. Y. 224; *Bonati* v. *Welsch*, 24 N. Y. 157; *Peterson* v. *Chemical Bank*, 32 N. Y. 21; *Lee* v. *Selleck*, 33 N. Y. 615; *King* v. *Sarria*, 69 N. Y. 24; *Hunt* v. *Hunt*, 72 N. Y. 217; *Garzot* v. *Rubio*, 209 U. S. 283; *Matter of Hernandez*, 172 App. Div. 477.) The judgment of the French court and the proceedings had thereunder does not estop the respondent from claiming an interest in the American property under the French law of community. (*Cook* v. *Conners*, 215 N. Y. 175; *Silberstein* v. *Silberstein*, 218 N. Y. 525.) The property rights existing between respondent and her husband are to be determined by the courts of this state according to the law of France as Amedee de Gasquet James was domiciled in France at the time of his death. (*Dammert* v. *Osborn*, 140 N. Y. 30; 141 N. Y. 564; *Matter of Hughes*, 95 N. Y. 60; *Matter of Barandon*, 41 Misc. Rep. 380; *Matter of Bertin*, 91 Atl. Rep. 761; *Matter of Cruger*, 36 Misc. Rep. 477; *N. Y. L. Ins. & T. Co.* v. *Viele*, 161 N. Y. 19; *Matter of Newell*, 38 Misc. Rep. 563, 565; *Flatner* v. *Loser*, 156

App. Div. 595; *Chamberlain* v. *Chamberlain*, 43 N. Y. 424; *Cross* v. *United States Trust Co.*, 131 N. Y. 330; *Matter of Dunn*, 39 App. Div. 510; *Harvey* v. *Richards*, 1 Mass. 38; *Ross* v. *Ross*, 129 Mass. 243; *Russell* v. *Maddox*, 95 Ill. 485.)

CHASE, J. This is a proceeding for a voluntary accounting by an executrix named in a will and to whom ancillary letters testamentary were duly granted by the Surrogate's Court of Ulster county. The nature of the proceeding and the petition of the executrix on which it is based, assert and emphasize her attitude toward the trust when the proceeding was commenced. She thereby recognizes her fiduciary office under the will of the decedent and her duty to account as executrix in the Surrogate's Court to the "Persons interested in said decedent's American estate." A statement of the facts leading up to the proceeding is necessary to understand it and appreciate the claims of the parties to it on this appeal.

The testator, Amedee de Gasquet James, died in Dinard, France, July 28, 1903, leaving a will and codicil constituting his last will. He was born in New Orleans, a citizen of the United States, and in his will, made a short time before his death, he stated that he was an American subject. In 1881 he married, in the state of New York, Elizabeth Pratt, a citizen and resident of this state. After their marriage they resided the greater part of the time in France and other continental countries of Europe. A part of the time, however, they resided in the United States, and each of their four children was born in this country. By his will he provided as follows:

"I give and bequeath to Elizabeth Pratt, my wife:

"1. The full ownership of La Belle Issue which I inhabit, without exception, including therein all the furniture which furnishes it without exception, together with the 'objects d'art,' pictures, silverware, household plate, linen, household provisions, horses, carriages and harness,

"2. All the furniture without exception which is contained in the house which I have rented at Dresden, Saxony.

"3. All the furniture contained in the apartment which I rent in Paris, No. 4 Avenue Bugeaud, without exception.

"I also give to my wife, Elizabeth Pratt, the full ownership of all securities without exception by me deposited either in Paris or London with bankers. I give to my wife the enjoyment during her life of all my jewels and diamonds and those of my mother."

He also provided therein as follows: "My fortune which is in America shall be divided between my children. I authorize my wife to put this fortune into the hands of one of the big trust companies (American)." He also appointed his wife "testamentary executor with seizen."

By his codicil he provided: "To complete my previous disposition I give to my wife, Elizabeth Pratt De Gasquet James, the full ownership of my two properties, La Belle Issue which I inhabit at Dinard, and La Coninais, which I possess at Taden and Dinan with all the furniture contained in these two properties."

He left him surviving besides his widow, four children, Elizabeth Bleecker, Victoire Louise, George Watson Pratt, and Pauline Andree. Victoire Louise prior to the death of her father married Raymond de Libran, and is now living; Pauline Andree since her father's death married Henry, Viscomte de la Mettrie, and is now living; Elizabeth Bleecker after her father's death married Leo Von der Decken and has since died leaving her husband her surviving, and two children, Hereward Von der Decken, and Elizabeth Von der Decken, both minors.

By an ante-nuptial agreement between Leo Von der Decken and said Elizabeth Bleecker t was covenanted and agreed that her inheritance from her father should, in case of her death, descend equally to her children, in case she should have children.

Two days after the death of the testator and on July 30, 1903, the will was duly registered and established according to the provisions of the French Code in a proceeding before the civil tribunal of first instance at Dinan, France. In the year 1904 a proceeding was instituted in said court by the executrix to which her children were all made parties to "Require the delivery to her of the legacies." The daughter Elizabeth Bleecker being of full age, in writing consented to the delivery of the legacies made to her mother by the will of her father "In full ownership and usufruct" — and the daughter Victoire Louise appeared in the proceeding with her husband. The consul of the United States appeared as guardian *ad litem* for the infants George Watson Pratt and Pauline Andrée "by reason of the conflict of interest existing between the said minors and Mme. De Gasquet James, their mother." All being represented by counsel a judgment was rendered in the proceeding March 19, 1904, which recited: "Whereas the defendants declared that they submit their rights to the court" and it "Declared and adjudged that the testament of M. Amedee de Gasquet James * * * [giving date of the will and the codicil] be carried out according to their form and tenor."

In that proceeding the children did not in any way claim under the French Code their "droits de reservè" in any part of the estate of their father, neither did the widow and executrix make any claim of any kind under such Code to a "community" interest in the estate which her deceased husband assumed to give and bequeath by his said will.

The widow thereupon accepted the possession and ownership of the property given to her in and by said will including the San Domingo bonds which were on deposit in London, and also the control and management of the American estate. No claim is made that the testator had any property that was undisposed of by his will.

After said judgment in France and in 1904 on the

petition of the executrix the will was filed in the office of the surrogate of the county of Ulster and ancillary letters testamentary were granted to her by that court. Soon thereafter the executrix commenced a proceeding in the Surrogate's Court of Ulster county to appraise the property of the testator in New York for the purpose of assessing the transfer tax and in her petition she included a statement of bonds, stocks and cash in New York which she alleged constituted personal property of the testator and a description of real estate within the state of New York which she alleged was owned by the testator at the time of his death. In that proceeding the net value of the said bonds, stocks, cash and real property for the purpose of such tax was determined and it was further adjudged that the tax be paid by the testator's four children. The taxes as so determined were subsequently paid by the executrix as such.

In 1907 the executrix commenced a proceeding in the state of Louisiana, to which her children were parties, in which it was adjudged that "They are hereby recognized as the only children and sole heirs and legatees of the late Amedee De Gasquet James, and as such be sent into and placed in possession as the sole and only owners of his succession and estate and property situated within the jurisdiction of this court."

In 1909 the executrix brought an action in the Supreme Court in this state making her children and the children of her deceased daughter, Elizabeth Bleecker, parties thereto. In the complaint she alleged that the testator at the time of his death "was the owner and holder of a large amount of personal property within the state of New York and still within the jurisdiction of this state and unadministered by plaintiff as sole executrix and which it is her duty to administer as soon as she lawfully and properly may do so and that the testator though resident in the said Republic of France at the time of his death had never been legally domiciled there as required

by the laws of said Republic to constitute him a domiciled resident thereof; that his legal domicile at the time of his death was doubtful or in the state of New York."

She further alleged that doubts had arisen as to the validity, meaning and true construction of the provisions of the will relating to the American estates and that she had been advised that the same were invalid and without force or effect, and that the testator died intestate as to his personal property within the state of New York.

One or more of the children answered in the action, but it was subsequently abandoned, or at least it never came to trial.

In August, 1912, the son, George Watson Pratt, and the daughter Pauline Andree filed a petition in the Surrogate's Court of the county of Ulster praying that the letters testamentary to their mother be revoked and that the estate referred to as the " American estate " be turned over to the Farmers' Loan and Trust Company as trustee and for a judicial settlement of the accounts of their mother. The daughter Victoire Louise answered the petition and joined in the prayer thereof, and asked that her distributive share in the estate of her father be paid to her. Citations were issued upon said petition and thereafter the executrix filed her petition for an accounting, alleging that " Your petitioner is desirous of rendering an account of all proceedings as such executrix as aforesaid to the surrogate's court of the county of Ulster." The executrix then answered the petition of her son and daughter as stated, in which she refers to property, if any, left by the testator in Santo Domingo, and alleges that it " Does not form a part of his American Estate and is not included in the devise and bequest to his children." (Presumably because the bonds were in London at the time of his death.) She admits therein " that she has paid various sums to the petitioners and her other children *on account of their share in the income of said American estate.*"

She further alleges therein "That the principal as well as the interest *was bequeathed to them* and it is possible that the payments made by her to her children may have included some portion of the *principal although her intention was to pay over only the income.   That no part of said American estate has ever been used by her* * * * for her own use *or been diverted or expended for any other use or purpose than to or for her said children and grand children* or in the management of said fund and the discharge of her duties as executrix thereof."

She further alleges "That she has in her own right by inheritance from her father and brother and the natural increase thereof and by gift of her late husband as she is informed and believes, at least one-half million dollars unpledged and unincumbered and is amply able to respond pecuniarily for any slight overdrafts if any, upon her *children's inheritance.*"

Among other allegations in her answer are, "That her late husband by his will authorized her as his wife, to put the property given to his children into the hands of one of the big trust companies and she has always been desirous so to do.   * * *   That said executrix has delayed filing her account from time to time in the hope that all her children might execute papers carrying out their father's wishes.   * * *   That she has been and is ready to make up and file her account and has filed a petition for that purpose."

All of the proceedings in the Surrogate's Court were thereafter · consolidated by an order of that court and by consent the order provided that certain property therein described (being all or substantially all of the American estate) be turned over to the Farmers' Loan and Trust Company as custodian of the court.

After the return of the citation the executrix filed an account which purported to be a full and complete account of the testator's American estate, and there is not a suggestion in any way in connection therewith that the same

was not wholly held by her in trust for the testator's three children and the children of the testator's deceased child. In the account she alleged that Schedule G thereof contained the names of *all persons entitled to a share* of the estate either as *widow, legatee or next of kin.* The only persons named in Schedule G are her son, two daughters and the husband and children of her deceased daughter. In her affidavit to the account she alleged that her late husband "owned at his death real estate, the mansion La Belle Issue at Dinard, the chateau de la Coninais near Dinan, and held under lease an expensive apartment at No. 1 Beust strasse, Dresden, Germany, and a suite of apartments in Paris." And referring to her children that "Their father's will contemplated that the principal of his American property given to them should be placed in trust for their benefit and the income only used by and for them."

Objections were filed to the account by all of the legatees.

The hearings on the proceedings were embarrassed by the fact that no inventory had been filed by the executrix and by the further fact that she did not appear personally in court until after many adjournments and until the testimony other than that to be given by herself had been received. But few witnesses were sworn. The petitioners Pauline Andree and George Watson Pratt gave testimony, also brief testimony was given by two of counsel appearing on the proceeding, by the husband of Pauline Andree, and a bookkeeper of one of the banking houses in which the securities were held. After repeated adjournments and orders relating thereto the testatrix appeared in person and was sworn as a witness. The oral testimony related to the De Gasquet James family and the expenditures by the executrix as claimed by her in her account. The petition and the objections thereto, together with the oral testimony as stated, supplemented by various records, papers and admissions by the executrix and the

contestants, were before the Surrogate's Court, and upon such record the decree was entered. The record so formed was substantially undisputed, and, except in minor and immaterial instances, free from the possibility of contradictory inferences. It has seemed necessary to give from the record an extended history of the steps that have been taken relating to the estate of the testator, and also a general statement to show the lack of controversy and dispute in the evidence relating to the account itself. It is upon such statement that we express the opinion that the facts as shown by the record did not permit of the reversal of the decree of the Surrogate's Court by the Appellate Division. The reversal of certain findings made by the Surrogate's Court (except as hereinafter stated) was unauthorized.

The domicile of the testator and his wife at the time of their marriage was in the United States. Whatever their intention as to their future domicile at that time, it clearly appears that for several years thereafter they in fact were living in this country not only a part of their time but as we have already stated, at the birth of each of their children and at no time prior to testator's death did he spend all of his time in France. They were aliens of France. They could only enjoy in France civil rights as granted to French people by virtue of a treaty between this country and France.

The French Code relating to legal community provides that it "is established by the simple declaration that the persons marry under the system of community, or by the non-existence of a contract." (Article 1400.)

Its establishment by the non-existence of a contract must necessarily refer to marriages between French citizens or if not between French citizens then at least to marriages celebrated in France. Community is composed among other things as to assets:

"1. Of all the personal property which the husband and wife own at the time of the celebration of the mar-

riage, together with all the personal property which comes to them during the marriage, either by way of succession of even donation, unless the donor has provided differently. * * *." (Article 1401.)

The Civil Code also provides (Article 913): "Advantages resulting from donations *iuter vivos* or from wills cannot exceed ½ of the property of the person who has made such dispositions, if he leaves only one legitimate child at his death; one third if he leaves 2 children; ¼ if he leaves three or a greater number."

It does not in any way appear that the testator and his wife declared however simply or informally that they married under the system of legal community prescribed by the French Code, neither does it appear that the property of either was ever treated as community property. All of the evidence is to the contrary. It clearly appears by the will itself that the testator intended a complete disposition of his property real and personal and not simply a bequest and devise of his interest in the united property of himself and wife. The statement of the testatrix in her answer to the petition of her son and daughter in the Surrogate's Court which we have quoted above is a clear disclaimer of any intention on her part, past or present, to claim legal community under the French Code. She therein asserts individual ownership in the property received by her individually. She also declared in her complaint in the action brought in the Supreme Court in this state that her husband had never been legally domiciled in France.

The domicile of origin is presumed to continue until a new one is acquired and the intent to change the domicile especially where such change is to a foreign country must be established. (*Dupuy* v. *Wurtz*, 53 N. Y. 556–561; *Matter of Newcomb*, 192 N. Y. 238.)

If the widow had claimed legal community under the French Code it was her duty under such Code to proceed promptly as therein provided to liquidate the community

and in so doing she would have been required to exhibit her property and at the same time the "droits de reservè" of the children would have been established, determined and satisfied. No such proceeding was ever instituted.

We do not discuss the question whether the French Code relating to legal community could be applicable to the testator and his wife as citizens of the United States married in this country, but assuming for the purpose of this decision that it could be so applicable, it was necessary in this proceeding in view of the terms of the will for the respondent if she so claimed to affirmatively show its applicability. Even if the French Code under certain circumstances clearly shown is applicable to citizens of the United States who have married in this country, its applicability could be modified or derogated by special stipulation (French Code, article 1393) and the rules of law relating to election and estoppel are applicable to persons whose property rights are governed by such Code. The executrix in conjunction with her children could elect to waive any claim under such Code and take under the will and thereby become bound to carry out the terms thereof and the intent and purpose of the testator.

The will in itself does not recognize legal community existing as between the testator and his wife. The testator therein refers to his property quite independent of any community interests therein and gives all thereof as therein described in general terms to his wife and his fortune in America to his children to be divided between them. In that respect it needs no interpretation. It was, therefore, primarily the duty of the Surrogate's Court to enforce its provisions. The executrix wholly failed to show any reason why its provisions should not be enforced in terms.

Referring again to the proceeding in the Civil Tribunal of first instance of Dinan in France, it appears that all the

parties being represented by counsel, expressly submitted their rights to the court.

It was also therein expressly stated that the appearance of the consul of the United States ·for the infants was "By reason of the conflict of interest existing between the said minors and Mme. De Gasquet James, their mother." The only conflict of interest that could then have existed must have grown out of the provisions of the French Code and the right of the children to claim their droits de reservè, and of the mother her legal community under such Code. The children refrained from claiming their droits de reservè and the widow her legal community. It seems then to have been determined that neither of the parties thereto were entitled to any rights under such Code. In any event the conflict of interest existing was submitted to the court and to its decision and the judgment was that the will should be executed according to its form and tenor. Its form and tenor as we have clearly shown was that the executrix should have the property in Europe therein described and the children should have the property in America and necessarily that neither the children nor the widow were entitled to any rights under the French Code contrary to the terms of the will. The determination of the.conflict, real or fanciful, thus submitted to the French court should not at this late day be repudiated. The law of France, so far as it relates to this case, was determined by its court.

The proceedings and judgment in France; the proceeding in this state to assess the transfer tax; the statement of the executrix in the legal proceeding in Louisiana and the judgment thereon; the complaint in the action brought in the Supreme Court in this state and the proceeding now before us including particularly the petition of the executrix, her answer to the petition of her son and daughter and the conceded and undisputed evidence taken herein are so wholly inconsistent with any claim on her part for legal community under the French Code

in antagonism to the simple terms of her husband's will as to have required a decree by the Surrogate's Court against her contention. She did not submit evidence that raised a question of fact in support of her claim of legal community under the French Code. Her failure in that particular was complete. It was not until nearly eleven years after the abandonment by her children of their "droits de reservè" if any, and after repeated inconsistent actions and proceedings on her part that she asserted such a claim. It was not until after the testimony in this proceeding had all been received and then only in an application for a commission to take testimony in France relating thereto. The proceeding before the Surrogate's Court had then been pending for about two years without a suggestion of such a claim, and no application was made by her to amend the proceeding. Her application was properly denied by the Surrogate's Court. She was properly held to the allegations of her petition, answer and account. (*Walrath* v. *Hanover Fire Insurance Co.*, 216 N. Y. 220, 225; *Southwick* v. *First National Bank of Memphis*, 84 N. Y. 420; *Bradshaw* v. *Mutual Life Ins. Co.*, 205 N. Y. 467, 474.)

We concur in the dissenting opinion of Justice COCHRANE of the Appellate Division, except that we express no opinion on the subject of commissions to the executrix other than as stated below.

The reversal of the decree of the Surrogate's Court, so far as it affects the question of the commissions of the executrix, was based upon conclusions of fact, and without expressing any opinion relating thereto the conclusion reached by the majority of the Appellate Division should be sustained unless a rehearing is directed, which seems unwise.

It was also held by the Appellate Division upon sufficient evidence that the executrix should not have been charged with 10,000 francs agreed to be paid by her to George Watson Pratt for an automobile.

The findings of fact (except as stated above) that were reversed by the Appellate Division were so reversed without any material contradiction of fact.

The order of the Appellate Division should be reversed and the decree of the Surrogate's Court modified by striking therefrom the charge against the executrix of 10,000 francs for an automobile purchased by her from George Watson Pratt and by allowing to the executrix her commissions on the accounting, and as so modified the decree of the Surrogate's Court is affirmed and the proceeding is remitted to the Surrogate's Court to make the change therein relating to the 10,000 francs and to determine the amount of the commissions of the executrix and credit the same to her and amend the decree accordingly, with costs in the Appellate Division and in this court to each of the parties to the proceeding appearing and filing a brief payable out of the estate on this accounting. The third question is answered in the negative. The other questions are not answered.

HISCOCK, Ch. J., HOGAN, CARDOZO, McLAUGHLIN, CRANE and ANDREWS, JJ., concur.

Ordered accordingly.