## Petition of OGANESOFF.

District Court, S. D. California, S. D. June 23, 1927.

No. 17911.

**1. Aliens ⟨⟫68(1)—Requirements of naturalization statutes must be strictly met.**

Requirements of naturalization statutes must be strictly met, and doubts should not be determined in favor of petitioner.

**2. Aliens ⟨⟫62(3)—"Domicile" and "residence" are synonymous in naturalization proceedings.**

The words "domicile" and "residence" are synonymous for purposes of naturalization.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Domicile; Residence.]

**3. Aliens ⟨⟫68(5)—General rules of evidence govern proof of domicile or residence in naturalization cases.**

Residence or domicile of applicant for naturalization can be shown only by testimony competent under the general rules of evidence.

**4. Domicile ⟨⟫8—Presumption is that married man's residence is where his family resides.**

Presumption is that a married man's residence is where his family resides, where that is at a permanent home and there has been no separation.

**5. Domicile ⟨⟫4(1)—Domicile is not lost by prolonged temporary residence.**

When domicile is once acquired, it is not lost by temporary absence, however prolonged.

**6. Domicile ⟨⟫8—Original domicile is favored as against acquired domicile.**

Presumption strongly favors the original domicile as against an acquired one.

**7. Aliens ⟨⟫68(5)—Petitioner for naturalization held not to have established residence for five years (8 U. S. C. A. § 382 [Comp. St. § 4352]).**

Alien declarant, of Russian nativity, whose wife was in Mexico, and who within five years frequently crossed the border on a Russian passport, *held* not to have established the five years' continuous residence required by 8 U. S. C. A. § 382 (Comp. St. § 4352) for naturalization.

**8. Aliens ⟨⟫62(5)—Applicant for naturalization, attempting to influence judge by gift of money, held to have shown lack of good moral character (8 U. S. C. A. § 382 [Comp. St. § 4352]).**

An alien who, while his petition for naturalization was pending, visited the judge's chambers and left money intended to influence his decision, *held* not to have shown the good character requisite, under 8 U. S. C. A. § 382 (Comp. St. § 4352), to his admission to citizenship.

**9. Aliens ⟨⟫62(1)—Not ground for naturalization that it would aid entry of petitioner's wife as immigrant.**

It is not valid ground for admission to citizenship that it would enable petitioner's alien

wife to enter the United States, which she could not otherwise do under the immigration laws.

Petition for naturalization of Karapet Oganesoff. Petition dismissed.

Karapet Oganesoff, in pro. per.

Olive A. Pixley and Frederick Jones, both of Los Angeles, Cal., opposed.

HENNING, District Judge. The petitioner is a native of Russian Armenia, and came to the United States on August 18, 1913, leaving a wife and two minor children at the place in Armenia from whence he came. The draft records show that he claimed exemption from military service during the World War on the ground of alienage. In April, 1925, he filed a petition for naturalization, which, upon a hearing, was denied by the court because of his claim for exemption under the draft, under the doctrine of In re Linder (D. C.) 292 F. 1001. The doctrine of that case is the rule in this district on that subject.

In September, 1926, this alien again filed a petition for naturalization, more than five years having elapsed since his declaration of intention subsequent to the Armistice. The wife and family of this alien continued to reside in Armenia up to 1925. Petitioner apparently was doing well, and for more than five years last past was engaged in business for himself as an owner and operator of trucks. About the time the petitioner filed his first petition, in 1925, his wife came from Armenia to Mexico, and has resided at Tia Juana, Lower California, Mexico, ever since. The children married about that time, and continued to reside in Armenia.

The United States immigration officers at the port of Tia Juana, Cal., certify that the petitioner departed the United States through the port of Tia Juana on August 23, 1925, and at that time presented a Russian passport. He declared at the time that he was going to Ensenada, Lower California, Mexico, "to visit friends." The records of the immigration station at Tia Juana further show that on September 5, 1925, this alien again departed from the United States, declaring that he was about to visit his wife, then residing at Tia Juana, Mexico. The records do not show his return to the United States after his departure in August. On September 8, 1925, the alien returned to the United States through Tia Juana, and again departed on November 27, 1925, and no record indicates when or how he returned. The records do show that on December 31, 1925, he again departed for Tia Juana, Mexico, and re-entered the United States on May 2, 1926.

From this time forward the report of the immigrant inspectors indicates that the alien continued to make approximately monthly visits to Tia Juana, Mexico, until the date of the report, in January, 1927.

The port of Tia Juana, Mexico, is directly across the international border from the port of Tia Juana, Cal., U. S. A. Recently the name of the port of Tia Juana, Cal., has been changed to San Ysidro, Cal., to avoid the confusion arising from both ports on opposite sides of the international border bearing the same name.

This petition came on for hearing before the court on January 7, 1927. The matter was taken under consideration for the purpose of determining whether or not petitioner, under the facts, is a resident of the United States within the meaning of the naturalization law. At the time of the hearing, a young woman, one Dickranochi Bonapartian, herself an alien, and herself a petitioner for naturalization, and claiming to represent the Near East Relief Society, appeared before the court on behalf of the petitioner, urging his naturalization on the ground, among others, that the wife of the petitioner is in Mexico awaiting the naturalization of her husband, so that she might thereby be exempted from certain provisions of the immigration laws which she was unable to meet otherwise.

Subsequent to the date of hearing as above stated, and on or about the 25th of January, 1927, petitioner, accompanied by the same young woman above named, visited the chambers of the judge before whom the matter was pending, at a time when the judge was on the bench. They were informed by the judge's secretary of this fact. Thereupon petitioner and the young alien woman told their story to the secretary of the judge, and urged him to intercede on behalf of the petitioner, and tendered to the said secretary two $5 bills. He declined to accept the offer. Thereupon the petitioner laid the money on the secretary's desk, and said that, in the event petitioner's petition is granted and he is made a citizen, "you will receive a substantial present," in which declaration the young woman alien accompanying him concurred.

Two questions present themselves under the facts as stated: (1) Has petitioner "resided continuously within the United States five years at least, and within the state or territory where such court is at the time held one year at least"? and (2) Does the evidence indicate "that during that time he has be-

haved as a man of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the same"? U. S. C. A. tit. 8, § 382 (Comp. St. § 4352).

[1] The Supreme Court of the United States in a recent case said, "No alien has the slightest right to naturalization, unless all statutory requirements are complied with," and defines the duty of a court of naturalization "rigidly to enforce the legislative will in respect of a matter so vital to the public welfare." U. S. v. Ginsberg, 243 U. S. 474, 475, 37 S. Ct. 425, 61 L. Ed. 853. Naturalization is not a natural right, but a privilege conferred by statutes, which prescribe the conditions to be met. Doubts should not be construed in favor of the petitioner.

[2] The authorities are clear that an applicant for citizenship must prove the period of his residence, which is a question of fact much discussed in legal lore. The court must consider all the facts bearing upon the subject in reaching a conclusion. It has been held that, where it appears that subsequent to his declaration of intention an alien procured a passport from an officer of his native land, the petition will be denied. In re Aldani (D. C.) 269 F. 193.

While the words "domicile" and "residence" may be distinguished for certain purposes, I think they are synonymous for the purpose of naturalization. It has often been held that they are synonymous, and I think the authorities bear out the conclusion here expressed. Statutes using these two terms have frequently been construed to this effect. Delaware, etc., Railway Co. v. Petrowsky (C. C. A.) 250 F. 554; Boucicault v. Wood, 3 Fed. Cas. page 988, No. 1693; Raymond v. Leishman, 243 Pa. 64, 89 A. 791, L. R. A. 1915A, 400, Ann. Cas. 1915C, 780.

[3] Intent, of course, is a very important factor in determining where one's residence or domicile is at any given time. That, however, is not determined by the simple statement of the interested party. Residence or domicile can be shown only by testimony competent and admissible under the general rules of evidence. Hearsay evidence, irrelevant or immaterial evidence, and opinion evidence is excluded. Ex parte Cunningham, 13 Q. B. Div. 418; Fulham v. Howe, 60 Vt. 351, 14 A. 652; Farrow v. Farrow, 162 Iowa, 87, 143 N. W. 856; In re Zerega (Sur.) 20 N. Y. S. 417; Fleming v. Straley, 23 N. C. 305.

[4] The presumption is that a married man's residence is where his family resides, when the family resides at a permanent home and no separation has taken place. Gaddie v. Mann (C. C.) 147 F. 955; Cadwalader v. Howell, 18 N. J. Law, 138; Gilbert v. David, 235 U. S. 561, 35 S. Ct. 164, 59 L. Ed. 360; Bangs v. Brewster, 111 Mass. 382; Sheehan v. Scott, 145 Cal. 684, 79 P. 350. The domicile or residence of origin of the petitioner was in the land of his birth. Delaware, etc., Railway Co. v. Petrowsky (C. C. A.) 250 F. 554.

[5] When a residence or domicile is once acquired, it continues until a new one takes its place. It is not lost merely by temporary absence, or temporary residence elsewhere, though that may be continued for a period of years. It is well settled that the domicile of origin easily reverts when lost, and for that reason is an important factor in determining actual residence. Matter of Robitaille, 78 Misc. Rep. 108, 138 N. Y. S. 391; The Venus, 8 Cranch, 253, 3 L. Ed. 553.

[6] The presumptions strongly favor a domestic domicile rather than a foreign and the original domicile as against an acquired one. Catlin v. Gladding, 5 Fed. Cas. page 307, No. 2520; In re James, 221 N. Y. S. 242, 116 N. E. 1010; Mather v. Cunningham, 105 Me. 326, 74 A. 809, 29 L. R. A. (N. S.) 761, 18 Ann. Cas. 692; In re Tootal, 23 Ch. Div. 532.

[7] It is clear to me that under the facts submitted petitioner has not been a resident of the United States continuously for five years immediately preceding his petition in contemplation of the naturalization law, if at all.

[8] The second question before me, involving the good moral character and attachment to the principles of the Constitution of petitioner, is much more simple. The authorities all agree that the burden is upon the petitioner for naturalization to establish by competent proof that he has fully met the requirements of the statute. This section does not prescribe what evidence is required, or would be satisfactory. Can it be said that a person who has a matter pending before a court is of good moral character, or attached to the principles of the Constitution of the United States, when he approaches the chambers of the court accompanied by one interested in serving the welfare of residents of foreign countries, either for the purpose of privately interviewing the judge, or those attached to the judge's office, and then and there passing money to the judge's secretary, and promising more in the event the matter he is interested in is decided by the court in his favor? The question furnishes its own answer.

[9] In this connection I cannot help but call attention to the fact that the provisions of the immigration law which confer privileges and immunities upon aliens desiring to enter this country by virtue of judicial action under the naturalization laws clearly was the inducing cause for the reprehensible conduct of this alien. It has been with a sense of deep concern that I have noted the large number of aliens seeking naturalization who have wife and minor children abroad. Some of them who have come into court before me have frankly admitted that the reason they seek naturalization is to be able to bring members of their family from foreign countries, who are unable to meet the requirements of the immigration law, but who would be privileged were the applicant a citizen of the United States. An alien who approaches our courts, asking that he be made a citizen, with no higher purpose than to circumvent the immigration law, clearly is disqualified. He has not met the requirements of our naturalization law, nor the ideals of the American people with reference to that subject.

Petitioner's petition is dismissed for both the reasons above outlined, and with prejudice for five years.