## Petition of WRIGHT.
### No. 145191.

District Court, E. D. Michigan, S. D.

Dec. 23, 1941.

Bodman, Longley, Bogle, Middleton & Farley, of Detroit, Mich., for petitioner.

Wade M. Becker, of Detroit, Mich., for Immigration and Naturalization Service.

TUTTLE, District Judge.

This case presents the question of whether an applicant for citizenship has resided continuously within the United States for

five years preceding the date of his petition, as required by the naturalization statutes. (8 U.S.C.A. § 707.) Petitioner is a citizen of Great Britain. He was born in Windsor, Ontario, which is located directly across the Detroit River from Detroit. He originally resided with his wife and children in Windsor, but like many other residents of Windsor, secured regular employment on the American side of the river and commuted between Windsor and Detroit. About 1920, he secured employment at the Ford Motor Company in this country, which employment has continued until the present time. In 1924, petitioner moved with his family to Birmingham, Michigan, and started to buy a home on contract. In 1929, he surrendered this contract and returned with his family to Windsor, and from that time until 1934 he commuted to and from his work across the river. It is clear, and the court finds, that from 1924 to 1929 the residence and domicile of petitioner were in Birmingham and that from 1929 to 1934 his residence and domicile were in Windsor. In 1934, petitioner decided that since his work was in this country he wanted to become a citizen of the United States. However, his daughter had commenced a training course in Windsor, Ontario, to become a teacher. In order to acquire American citizenship as early as possible, petitioner therefore rented a room in Dearborn, Michigan, to live in, leaving his wife, daughter, and son at the home he had established in Windsor until his daughter could complete her education. Petitioner spent most of his week-day nights from that time until 1939 at his room in Dearborn, returning to spend most of his week-ends with his family in Windsor. He informed his friends that he was establishing a residence in Dearborn for the purpose of becoming a citizen. He contributed to the community fund there, took his vacation with his family in this country, and usually had his family come to this country to be with him on holidays (although they did not stay in his room). He deliberately spent his nights in Detroit when he would have preferred, apart from the requirements for citizenship, to stay with his family in Windsor. Altogether, it was more than $1,000 more expensive to him to pursue this course of action than to have remained in Windsor.

On October 28, 1939, his daughter having completed her education, petitioner brought his wife and son to Dearborn and took up new lodging. He has been living there with them ever since.

The naturalization examiner recommended denial of this petition on the ground that petitioner had not resided in the United States for the required five-year period, since his wife and family resided in Windsor until October 28, 1939. There is no question but what petitioner has satisfied the other requirements for citizenship. The sole issue therefore is whether petitioner was a resident of the United States during the period from 1934 to 1939.

■ The word "residence" is used in many different senses in the law. As used in the naturalization act, however, it is practically synonymous with "domicile". In re Barron, D.C., 26 F.2d 106; Petition of Oganesoff, D.C., 20 F.2d 978. As nearly as may be defined, it means the place where one lives with the intention of making it his home. While residence depends to a large extent upon intention, the intention of the individual in question must be judged by his acts, and not solely by his declarations.

■ Consideration of the evidence here leads me to the conclusion that, although petitioner honestly thought that he was becoming a resident of the United States in 1934, his actions were inconsistent with a change of residence and he himself still regarded Windsor as his home. What petitioner intended here to do was to comply with the residence requirements for citizenship, and to do those specific things which he thought necessary to establish his residence for that purpose. In pursuance of this deliberate plan, petitioner made a conscious effort to do certain things in this country which he thought would lead the naturalization officials to conclude he resided here, by sleeping and eating in this country as much as possible, taking his vacations here, and contributing to local charities. In the meantime, his wife and children remained in Windsor, and he returned to visit them on weekends. Many of his belongings were left in Windsor, and personal services were being furnished him by his family at their home. As petitioner has very frankly admitted, his living in this country was a matter of inconvenience to him, undertaken solely to meet the requirements of citizenship. While a motive to acquire residence for citizenship purposes does not necessarily defeat its acquisition, the mo-

tive must be taken into consideration in determining whether the intention to change one's residence exists. See Restatement of Conflict of Laws, § 22.

It is therefore my conclusion that, while petitioner had the desire and intention to acquire residence in this country so as to obtain the benefit of the citizenship act, he did not change, nor intend to change, his home to this country when he rented a room in Dearborn. The distinction here pointed out has been well stated by the American Law Institute in the Restatement of Conflict of Laws, under the heading of Domicile. Section 19 of the Restatement states as follows:

"The intention required for the acquisition of a domicil of choice is an intention to make a home in fact, and not an intention to acquire a domicil."

In the Comment to Section 19, it is stated:

"a. Intention to make home and desire to acquire domicil. A person sometimes desires to have his domicil in a certain place, in order to get the benefit of one or more of the legal consequences of having a domicil there, but does not wish to change his home to that place; this desire to have a domicil in a certain place has no effect in fixing his domicil there."

Other illustrations beside those given under this Section of the Restatement, which are analogous to the present case, can readily be conceived. For example, suppose A, who lives with his wife and family at a home in Detroit and works there, desires to sue B in the Federal Court; and, in order to obtain diversity of citizenship, rents a room in Toledo, joins organizations, spends a considerable proportion of his time there, and tells his friends he is becoming a resident of Ohio, but leaves his wife and furniture in Detroit and continues to keep his job there. The court would have to say that, although he has desired to become a resident of Ohio for the purpose of acquiring a status to sue in the Federal Courts, he has not intended to change his home and remains a resident and citizen of Michigan.

▮▮▮ In order to decide this case in petitioner's favor, the court would have to find that he has satisfied three different burdens of proof resting upon him. In the first place, the burden is upon him to prove that he has satisfied every requirement of citizenship, including the require-

ment of residence. United States v. Ginsberg, 243 U.S. 472, 474, 37 S.Ct. 422, 61 L.Ed. 853; United States v. Macintosh, 283 U.S. 605, 51 S.Ct. 570, 75 L.Ed. 1302. Citizenship is a privilege extended to aliens, and doubts upon any issue of fact are resolved in favor of the government. In the second place, the rule is well established that domicile once established is presumed to continue, until superseded by a new domicile. Restatement of Conflict of Laws, § 23; Mitchell v. United States, 21 Wall. 350, 88 U.S. 350, 22 L.Ed. 584. Here, there is no question but what petitioner resided in Windsor from 1929 to 1934, and the burden is upon him to show a change in that status in 1934. Third, there is a well-recognized presumption that the domicile of a married man is where his wife and family live, and special circumstances must be proved to lead the court to conclude that he has adopted a different domicile. Petition of Oganesoff, D.C., 20 F.2d 978; Gaddie v. Mann, C.C., 147 F. 955; 9 R.C.L. 557.

Cases are cited by counsel for petitioner in support of his application, which hold that if an alien who has actually established residence in the United States returns on visits of a temporary nature to his native land the continuity of residence in this country is not broken. The situation in those cases, however, is the exact reverse of that in the case at bar. There, the individual has first changed his residence to the United States and the issue is whether return trips show an intention to change it back again. Here, the issue is whether the individual in question has changed his residence in the first instance.

I do not mean by this opinion to intimate that a married man cannot acquire a residence apart from his wife and family. If petitioner, for example, had gone to Iowa and bought a farm to live on, which he proceeded to equip and start farming operations upon, but had left his wife and children home for the remainder of the school year and only returned to Windsor to bring them back to the farm, the conclusion that his residence was changed might well be reached. See Schlawig v. De Peyster, 83 Iowa 323, 49 N.W. 843, 13 L.R.A. 785, 32 Am.St.Rep. 308. However, I am satisfied that under the facts of this case petitioner did not have a present intention to make his home in this country in 1934, but rather had the future intention to change his home

when he could bring his family over here. His application for citizenship is denied, without prejudice to its renewal on or after October 28, 1944.