## In re LINDER.

(District Court, S. D. California, S. D.   November 5, 1923.)

No. 10842.

**1. Aliens ⬅62—Disloyal attitude shown by claiming exemption from draft for noncitizenship conclusively presumed to exist to November 11, 1918, and presumed to continue thereafter till declaration of intention executed.**

A claim of exemption from the draft during the World War on the ground of noncitizenship demonstrated a disloyal attitude toward the United States, which is conclusively presumed to have continued until November 11, 1918, with a presumption that it continues thereafter until some act indicative of a contrary attitude, such as a declaration of intention, is performed.

**2. Aliens ⬅68—One who executed declaration of intention before November 11, 1918, but claimed exemption from draft, must execute new declaration, and wait five years before applying for final papers.**

Where a declaration of intention to become a citizen, on which application for final citizenship is based, by one who claimed exemption from the draft on the ground of noncitizenship, was executed previous to November 11, 1918, a new declaration of intention must be executed, and five years later final papers may be applied for, irrespective of whether applicant admits having claimed exemption on such grounds or denies it, if the court finds that such claim had been made.

**3. Aliens ⬅68—One who claimed exemption from draft, but filed declaration of intention after November 11, 1918, may apply for final papers five years after date of declaration.**

If a declaration of intention to become a citizen of the United States, on which application for final citizenship papers is based, was executed subsequent to November 11, 1918, though final papers have been heretofore denied for want of loyalty, a new application, based on the same declaration, may be made five years after the date of the declaration.

**4. Aliens ⬅62—That applicant for citizenship, besides claiming exemption from draft on account of noncitizenship, claimed exemption on other grounds, does not relieve him from rules applicable to first claim.**

That an applicant for citizenship, who claimed exemption from the draft at the time of the World War on the ground of noncitizenship, also based it on a ground which was allowed by the exemption board, does not relieve him from the rules applicable to applicants who claimed exemption because of noncitizenship.

Application by John F. Linder to become a citizen of the United States.   Denied, with leave to file a new application.

John F. Linder, in pro. per.

Olive A. Pixley, Naturalization Examiner, of Los Angeles, Cal., for the United States.

BLEDSOE, District Judge.   The above-mentioned petitioner, who came to this country from Germany in 1914, and determined to remain here and make this his home, did not, nevertheless, take out his declaration of intention until March 10, 1919.   In his questionnaire, at the time of the draft in the World War, he claimed, and was thereafter duly allowed, exemption from service on the ground of noncitizenship.   His application for citizenship having been denied because of this claim of exemption, a request is made of the court for leave to file a new ap-

plication. This request is but one of a number of like import, and requires the court to announce a ruling which shall apply to all similar cases arising in the future.

It has been my belief at all times that those who came to America, not as mere sojourners, but with the intention of remaining here, making this land their home, availing themselves of the protection afforded by this government, and enjoying the opportunities derivable in virtue of its protecting care, owed at least a moral obligation to assist this government whenever it should be in need of their services. In consequence, with respect to those falling within that category who claimed exemption from the draft during the World War on account of the fact that they were not citizens of this country, whether they had previously executed a declaration of intention or not, I have consistently held that their applications for final citizenship papers should be denied on the ground of a want of loyalty. To my mind, they were so little concerned with their sense of obligation to their adopted land and its necessary defense that, in the exercise of the wide discretion conferred upon the court, I could not find it in my heart, in the face of their claimed exemption, to receive them into full citizenship. They were not fitted for complete acceptance into the great American household of faith.

In so doing, I nevertheless have been continually bothered in the reflection that to permit such civic delinquents to remain in our midst, and yet to deny to them the proud privilege of American citizenship, was to foster a growing menace. It could not be otherwise than that, as the years progressed, living with us, and yet not of us, they would become morose, and probably hostile, and capable of working infinite danger to us and to our beloved institutions. Congress has so far failed to act respecting such delinquents, although concerning those who went just a step further, and, in the face of the draft, not only claimed exemption, but also actually canceled their previously executed declarations of intention, it has enacted that they should forever be denied admission to citizenship. Act July 9, 1918, 40 Stats. L. part I, p. 885 (Comp. St. Ann. Supp. 1919, § 2044b). In the absence of controlling congressional legislation or other authority, what may we reasonably determine as to the final disposition of those who did not absolutely renounce their disposition to seek American citizenship, but who, nevertheless, having determined to make this land their home, did, upon the naked ground of noncitizenship, decline to defend it when called upon?

[1] Preliminarily, it may be said that, having determined that such claim of exemption demonstrated a disloyal and unacceptable attitude toward the United States, it would seem that, as long as that attitude continued to exist, either by express affirmance or by reasonable implication, all such applicants should be looked upon as undesirable acquisitions to our citizenry. By implication, such attitude would continue as long as their obligation to serve the United States existed and they continued to decline it. In other words, it would be conclusively presumed to exist, at least until the Armistice was declared, namely, November 11, 1918. In addition, it would be presumed to exist thereafter until some act indicative of a contrary attitude, e. g., the execu-

tion of a declaration of intention, should have been performed. To entitle themselves to citizenship, then, they must have done that which would suffice to interrupt the continuance of the presumption referred to, and also they must have shown, in the manner required by the naturalization laws, at least five years of continuous loyal devotion to the United States and to its interests.

[2, 3] Based upon these premises, the following conclusions seem inevitable: If the declaration of intention, upon which the application for final papers was based, was executed previous to the Armistice, then a new declaration, evincing the possession of a new and proper attitude toward the United States, should be insisted upon. Five years after the making of such new declaration, final papers could be applied for. If the declaration upon which the application was based was executed subsequent to the Armistice, then, although a denial as for want of loyalty may heretofore have been had, yet I would be disposed to accept a new application, based upon the same declaration, at the end of the five-year period succeeding the date of such declaration.

The question has been asked whether or not a different treatment should be accorded to those who admit having claimed the exemption, as compared with those who do not remember or have denied the making of such claim, but with respect to whom, from the evidence produced, the court has found, as a fact, that such claim actually was made. The answer to this to me seems obvious. It is possible that in one or two instances the court has found that the claim of exemption referred to was intentionally made, although the fact may have been that it was made unintentionally or under a mistake; nevertheless, in every instance, doing its best, the court has diligently sought to ascertain the truth. Giving due consideration to all the evidence presented, it had to arrive at some conclusion. That conclusion arrived at, unless set aside, presumably is expressive of verity in the premises. Therefore, in the face of denial or otherwise, one who is found guilty by the court of having made such claim of exemption, stands precisely in the same situation as if the judgment of the court had been based upon his personal admission to that effect.

[4] The question also has been asked as to whether the rule should be applied to one who made the claim for exemption on the ground mentioned and also made a claim, allowed by the exemption board, based upon other ground of exemption, such as dependency. Such a one would not need to make the additional claim for exemption on the ground that he was not a citizen. If he was in position to go, he should have gone when called, without making any claim for exemption on the ground of noncitizenship. If he was not in a position to go, and had a valid claim, based upon some other ground, the making of that claim should have sufficed for his purposes. Having had a valid, worthy claim does not in any wise, in my judgment, relieve him from the odium attaching to the tendering of the unworthy claim.

With respect to those who made the claim of exemption in question, and have not yet made application for their final papers, it would seem that, if they make an application hereafter, based upon a declaration executed prior to the Armistice, the court will be bound, in con-

formity to its consistent practice, to deny such application. Thereafter they will be governed by the procedure indicated hereinabove. If they shall have executed a declaration subsequent to the Armistice, and shall base their application upon that, they will fall in the other category adverted to hereinabove; that is, five years after the making of such declaration they may apply for citizenship.

I am authorized to announce that my colleague, Judge JAMES, concurs in the conclusions announced herein.