### In re BEVELACQUA. In re GITELMAN et al. In re TSALER.

(District Court, D. Massachusetts. February 5, 1924.)

Nos. 61440, 61802, and 63586.

Aliens ⊕═62—Claim of exemption from draft held to render alien ineligible for naturalization.

A resident alien, who claimed exemption from military service because of his alienage, *held* ineligible for citizenship, under Naturalization Act, § 4 (Comp. St. § 4352), at least until the expiration of five years after the official termination of the war with Germany.

⊕═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Naturalization Petitions. Saturno Bevelacqua, Samuel Gitelman and others, and Itse Tsaler, alias, etc., apply separately for naturalization. Petitions denied.

Petitioners, pro se.

James Farrell, Chief Naturalization Examiner, of Boston, Mass., for respondent.

LOWELL, District Judge. The question has arisen in several petitions for naturalization of the effect of the refusal by a resident alien, not a German or an Austrian, to enter the service of the United States at the time of the war with Germany. The statute as to naturalization provides in part as follows:

"It shall be made to appear to the satisfaction of the court admitting any alien to citizenship that immediately preceding the date of his application he has resided continuously within the United States five years at least, and within the state or territory where such court is at the time held one year at least, and that during that time he has behaved as a man of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the same." Comp. St. § 4352.

Judge Morton, in the leading case on this subject, refused to admit an alien to citizenship whose five years of continuous residence in the United States included the years of the war, up to the Armistice, in which he had refused to serve on account of alienage. In his opinion Judge Morton says:

"The present case appears to turn on the preceding phrase, 'attached to the principles of the Constitution of the United States.' Attachment to the principles of the Constitution means, I take it, attachment to the principles of free government which are embodied in that instrument. 'Attachment' is a stronger word than 'well-disposed.' Used in this connection it implies, I think, a depth of conviction which would lead to active support of the principles in question, to doing one's share to maintain them. It is to persons holding such views and to them only, that citizenship in this country is open." In re Shanin (D. C.) 278 Fed. 739, 740.

See, also, In re Linder (D. C.) 292 Fed. 1001.

The question as to the precise effect of this claimed exemption was left open in Re Shanin. Shall it last forever, or shall it be presumed to end at some specified time? Congress has denied citizenship to neutral aliens, who, after having declared their intention to become citizens, refused to serve in the war. Act July 9, 1918 (Comp. St. Ann. Supp. 1919, § 2044b). It has not passed any statute which would declare its attitude to other aliens who refused to serve in the war; but such aliens showed themselves willing to enjoy the advantages of living in the United States, without being willing to make any sacrifice for their adopted country. They evidently felt no obligation to the United States, and were not, in my opinion, "attached to the principles of the Constitution of the United States." In re Shanin, ubi supra. However, it is quite possible, and even likely, that some recusants may change their feelings afterwards and become attached to the principles of our government. It seems to me, therefore, that some locus poenitentiae should be allowed them. The war with Germany was officially declared at an end on the 2d of July, 1921, by joint resolution of Congress. 42 Stat.

105. In my opinion, a. continuing refusal to serve in the war against Germany should operate to prevent a resident alien so refusing from being considered as "attached to the principles of the Constitution of the United States" during the entire time of the official duration of the war. If a person has lived for five years continuously after July 2, 1921, in the United States, I think that he may be found to be qualified for citizenship, although he refused to serve in the war with Germany, provided that after that date he filed his declaration of intention to become a citizen, and it appears affirmatively that his attitude towards his adopted country has changed.