Susan Marwan **ABDUL–KHALEK**,
Petitioner,

v.

Carol **JENIFER**, District Director,
Immigration and Naturalization
Service, Respondent.

No. 94–CV–75134–DT.

United States District Court,
E.D. Michigan,
Southern Division.

June 16, 1995.

Steven M. Garmo, Garmo and Salloum, Southfield, MI, for petitioner.

Elizabeth J. Larin, Detroit, MI, for respondent.

*OPINION AND ORDER DENYING PETI-
TION FOR REVIEW OF DENIAL OF
APPLICATION FOR NATURALIZA-
TION*

ROSEN, District Judge.

## I. INTRODUCTION

This matter is presently before the Court on the petition of Suzan Marwan Abdul–Khalek for review of the Immigration and Naturalization Service's denial of her application for naturalization. The INS concluded that Ms. Abdul–Khalek's repeated lengthy absences from the U.S. during the five years preceding her application for naturalization, broke the "continuity of residence" required for admission to citizenship under the Immigration and Nationality Act.

Having reviewed and considered Petitioner and Respondent's briefs and supporting documents, and having conducted a hearing on this matter on May 25, 1995, the Court is now prepared to render its decision. This Opinion and Order sets forth the Court's ruling.

## II. PERTINENT FACTS

Petitioner Suzan Marwan Abdul–Khalek (nee Suzan Abu–Hamdan) was born in Aman, Jordan in 1961. She was admitted to the United States as a lawful permanent resident alien on February 28, 1988.[1] She attended classes at Eastern Michigan University in the spring and summer term of that year, and helped her family with their restaurant business in her free time. Ten months after arriving here, on December 26, 1988, Petitioner left the U.S. for a lengthy stay in Lebanon. She stayed out of the country for 10 months, until the end of October, 1989. (During this 10–month period, Petitioner met Marwan Abdul–Khalek, and shortly thereafter, the two became engaged.)

She returned to the U.S. on October 28, 1989, but approximately four months later, on March 1, 1990, she left the country again

for Lebanon, where she remained this time for eight months. During that trip, on September 11, 1990, Petitioner married Marwan Abdul–Khalek, a Jordanian citizen residing in Lebanon.

Two months after marrying Marwan Abdul–Khalek, on November 8, 1990, Petitioner returned to the U.S. (leaving her husband in Lebanon). Six months later, in May 1991, Ms. Abdul–Khalek gave birth to her first child, Amal, in Ann Arbor, Michigan.[2]

On August 11, 1991—barely nine months after returning to the U.S.—Ms. Abdul–Khalek returned to her husband in Lebanon with her daughter. She and her daughter stayed in Lebanon for seven months, until March 3, 1992, when they returned to the United States (Mr. Marwan Abdul–Khalek remained in Lebanon).

Three months later, on June 3, 1992, Petitioner again left the U.S. and went back to Lebanon where she stayed this time for four months. (According to Petitioner, during this visit, her husband expressed a desire to come to the United States, and he supposedly gave her money to buy a house for the entire family to live in when he got here.)

On October 20, 1992, Ms. Abdul–Khalek returned to the United States. Five months later, in March 1993, her second child, Ameer, was born in Royal Oak.

According to Petitioner, it was after the birth of her second child that she decided to find out about bringing her husband to this country. She was informed that because she was not a citizen, her husband could not get preferential status to immigrate as a resident alien, and therefore, it would take several years before he could obtain a visa. Since she had been a resident alien for slightly more than five years (the minimum period required to apply for naturalization), she decided she would apply for U.S. citizenship so her husband could get preferential immigration status (as a spouse of a U.S. citizen).

---

1. Petitioner's mother, brother and sister had immigrated to the U.S. several years earlier. Her father is deceased.

2. The record is not clear on where, precisely, Petitioner lived during her time in the U.S. Doc-

uments attached to the INS's Motion for Summary Judgment suggest that while Petitioner's mother, brother and sister appear to have been residing in Livonia, Ms. Abdul–Khalek lived, at least for some of the time, in Ann Arbor.

On May 13, 1993, Petitioner filed an application for naturalization. On May 21, 1993, with her two children, Ms. Abdul–Khalek again left the country and went to Lebanon to be with her husband. This time, she stayed in Lebanon for 11 months and did not return to the United States until April 26, 1994. (She states in her petition that she went to Lebanon because her father-in-law was sick. However, in her June 21, 1994 Affidavit she states that her husband's father was only sick for two weeks, but she stayed on because her husband wanted her to and she had no reason to return to the U.S.)

On May 19, 1994, she appeared for a citizenship examination before the INS in Detroit. After providing the examiner with a list of her absences from the country, she was advised that she was ineligible for citizenship. The examiner gave her two reasons for her ineligibility: (1) that she had not met the "physical presence" requirement because she had been absent from the United States for 39 of the 60 months prior to here citizenship exam; and (2) that because of her absences of more than six months but less than one year, she did not meet "continuity of residence" requirement.

On June 24, 1994, Petitioner appealed the examiner's decision to the District Director. She was subsequently notified to appear for a hearing on September 27, 1994, and to bring with her documentation concerning her travel abroad and her presence in the United States during the five-year period on question. (She submitted the documents attached as Exhibits 5 through 83 of the INS's Motion for Summary Judgment.)[3] On November 16, 1994, INS District Director Carol Jenifer affirmed the original examiner's ineligibility determination. However, the Director did revise the initial examiner's decision to the extent that she amended the reasons given for Ms. Abdul–Khalek's ineligibility determination. The Director found that the examiner mis-applied the "60–month physical presence" rule in calculating Petitioner's time of presence in the U.S. from the date of the citizenship exam. The correct application of the rule is to determine physical presence in the 60 months *preceding the date of the naturalization* **application,** which in Petitioner's case was May 13, 1994. (The requirement is that the petitioner be physically present in the U.S. at least 50% of the 60–month period, i.e., at least 30 months) In the 60 months preceding her application, Petitioner was "physically present" in the country for 31 months, i.e., one month more than the minimum requirement.[4]

However, the Director agreed with the initial examiner's conclusion that due to Petitioner's pre-application absences from the United States of more than six months, Ms. Abdul–Khalek had broken the continuity of residence. Accordingly, the Director affirmed the determination of ineligibility for citizenship and denied her petition for naturalization.

On December 27, 1994, Petitioner filed the instant action seeking review of the District Director's decision.

## III.  DISCUSSION

### A.  STANDARD OF REVIEW

Section 1421(c) provides for judicial review of naturalization decisions of the INS, as follows:

> A person whose application for naturalization under this subchapter is denied, after

---

**3.** Among the documents submitted by Petitioner were copies of her Jordanian Passport, issued June 17, 1991 (i.e., 3½ years after she first came to the U.S.) in which she lists her place of residence as "Beirut". She also submitted (1) an affidavit from her brother stating that she helped out in their family restaurants when she was in the U.S. but was never treated as an "employee", (2) her own affidavit stating the same regarding helping out in the family restaurants and in which she also stated that she was residing (as of June 21, 1994, i.e., two days before her INS appeal hearing) at 17861 Country Club Drive in Livonia, (which is her brother's house) and (3) a copy of a deed (in her name) to a house in Dearborn which is dated June 13, 1992.

**4.** By calculating Petitioner's physical presence in the 60 months prior to the citizenship examination, the original examiner found her to have been physically present in the country for only 21 months because her last trip to Lebanon, which occurred *after* she made her application for naturalization, was (mistakenly) counted as part of the 5–year–period immediately preceding her application.

a hearing before an immigration officer under section 1447(a) of this Title, may seek review of such denial before the United States district court for the district in which such person resides.... *Such review shall be de novo, and the court shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing de novo on the application.*

8 U.S.C. § 1421(c) (emphasis added).

## B. *CONTINUOUS RESIDENCY REQUIREMENTS*

The residency requirements for naturalization are set forth in Section 1427 of the Act:

**(a) Residence**

No person, except as otherwise provided in this subchapter, shall be naturalized unless such applicant, (1) immediately, preceding the date of filing his application for naturalization has resided continuously, after being admitted for permanent residence, within the United States for at least five years and during the five years immediately preceding the date of filing his application has been physically present therein for periods totaling at least half of that time, and who has resided within the State or within the district of the Service in the United States in which the applicant filed the application for at least three months, (2) has resided continuously within the United States from the date of the application up to the time of admission to citizenship, and (3) during all the period referred to in this subsection has been and still is a person of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States.

**(b) Absences**

Absences from the United States of more than six months but less than one year during the period for which continuous residence is required for admission to citizenship, immediately preceding the date of filing the application for naturalization, or during the period between the date of filing the application for naturalization and the date of any hearing under section 1447(a) of this title, shall break the continuity of such residence, unless the applicant shall establish to the satisfaction of the Attorney General that he did not in fact abandon his residence in the United States during such period.

8 U.S.C. § 1427(a), (b).

■ Thus, under Section 1427, there are actually four separate residency/physical presence requirements: the applicant must show (1) that she resided in the U.S. continuously for at least five years; (2) that during the five years immediately preceding the naturalization application, the applicant must have been "physically present" in the U.S. for at least half of that period; (3) that she resided at least three months in the state where the application is filed; and (4) that there is no break in continuity of residence during the five-year period preceding her application *and* during the period between the date of filing the application for naturalization and the date of her INS review hearing.

■ Recognizing that the Naturalization Act confers a privilege, federal courts have required strict compliance with its continuous residence requirements. *See, In re Petition of LaVoie*, 349 F.Supp. 68, 70–71 (D.V.I. 1972). "Residence" for purposes of the naturalization statute means the place where the alien has lived with the intention of making that place his home. *Petition of Wright*, 42 F.Supp. 306, 307 (E.D.Mich.1941). The applicant's intention regarding his residence is to be judged by his acts, and not by his declarations. *Id.; In re Barron*, 26 F.2d 106 (E.D.Mich.1928).

With respect to breaks in the continuity of residence created by absences from the country for periods of more than six months, the INS has promulgated regulations setting forth the kinds of factors to be considered in determining whether the reviewing INS officer (or the court) should deem a prolonged absence from the country to evidence an "abandonment of residence" under 1427(b). These include evidence that during the absence:

A. The applicant did not terminate his or her employment in the United States;

B. The applicant's immediate family remained in the United States;

C. The applicant retained full access to his or her United States abode; and

D. The applicant did not obtain employment while abroad.

8 C.F.R. § 316.5(c)(1)(i)(A)–(D).

■ Applying these standards to the instant matter, the Court finds that the continuity of residence was broken by Ms. Abdul–Khalek's numerous prolonged absences from the United States—*including, in particular, the 11 month absence from the country between the date of her application for naturalization and her INS review hearing,* **which was not considered by the INS.**

Ms. Abdul–Khalek's absences from the country are summarized in the following chart:

| | | In U.S. | | | Out of Country |
|---|---|---|---|---|---|
| Arrived in U.S. | 02/28/88 | 10 mos. | Left U.S. | 12/26/88 | 10 mos. |
| Returned | 10/28/89 | 4 mos. | Left U.S. | 11/08/90 | 8 mos. |
| Returned | 11/08/90 | 9 mos. | Left U.S. | 08/11/91 | 7 mos. |
| Returned | 03/03/92 | 3 mos. | Left U.S. | 06/03/92 | 4 mos. |
| Returned | 10/20/92 | 7 mos. | Left U.S. | *05/21/93 | 11 mos. |

* On 05/13/93 Petitioner filed her Application for Naturalization
  On 05/21/93 she left the country and stayed with her husband in Lebanon
  On 04/26/94 she returned to the U.S. (i.e., she was out of the country for 11 months)
  On 05/19/94 she appeared for her first INS citizenship examination
  On 09/27/94 her INS review hearing was held

---

With respect to application of the factors to rebut the obvious "breaks" in continuity, Petitioner contends that she has presented evidence that she did not terminate her U.S. employment during her absences from the country. However, on her naturalization application, she indicated "none" in the space for listing employers, and she (and her brother) both state in their affidavits that she only "helped out" in the family restaurants and was never treated as an "employee". Therefore, the Court finds that there is no persuasive evidence satisfying the "no termination of employment in the U.S." during her absences.

As for the second factor, Petitioner also contends that her "immediate" family remained in the United States during her absences. However, as the INS found, Petitioner's "immediate" family are her children and her husband, not her mother and her siblings. Ms. Abdul–Khalek's husband was (and apparently still is) in Lebanon, and after her children were born, they did not remain in the U.S. when she traveled to Lebanon. Rather, they went with her.

With respect to the third factor, applicant's retention of full access to her U.S. "abode", as indicated above, as of her June 1994 INS review hearing, Ms. Abdul–Khalek stated that she was still living in her brother's house. Although she had been deeded a house in Dearborn two years earlier, in 1992, there is no indication that she ever made any preparations to move into that house.[5]

The only factor which Ms. Abdul–Khalek has satisfied is the fourth factor, i.e., she did not obtain employment while abroad. However, under the circumstances of this case, the Court finds that this factor should not be given much weight since her husband appears to have substantial holdings in the Middle East (see documents attached to the INS's Motion for Summary Judgment), thereby obviating any need for Mrs. Abdul–Khalek to seek employment to support herself and her children while in Lebanon.

In sum, the Court agrees with the District Director's conclusion that the information supplied by Petitioner, viewed as a whole, simply does not establish for purposes of naturalization that she did not abandon her residence in the United States during her

---

**5.** To the extent that Petitioner relies on an intention to wait until her husband gets here before she moves into the house, as the District Director noted in her November 1994 decision, Ms. Abdul–Khalek has never filed any petition for her husband to come to the United States.

trips out of the country of more than six months. It would appear from the record that Ms. Abdul–Khalek only returned to the United States to preserve her status as a lawful permanent resident (and to see her extended family). Indeed, by her own admission, her true motivation for seeking citizenship was only to obtain a preferential status for her husband's visa in the future. (See Petitioner's Affidavit, 12–14 of the INS's Motion for Summary Judgment.)

## IV. *CONCLUSION*

For all of the foregoing reasons, and for the reasons stated by the Court on the record at the hearing held on May 25, 1995,

IT IS HEREBY ORDERED that Suzan Marwan Abdul–Khalek's Petition for Review of Denial of Application for Naturalization be, and hereby is, DENIED.[6] Accordingly,

IT IS FURTHER ORDERED that the decision of the District Director of the INS denying Ms. Abdul–Khalek's application for naturalization is AFFIRMED.[7]

## *JUDGMENT*

The Court having this date entered an Opinion and Order denying Petitioner Suzan Marwan Abdul–Khalek's Petition for Review of Denial of Application for Naturalization; and being fully advised in the premises,

NOW, THEREFORE, for the reasons set forth in the Court's Opinion and Order of this date,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the decision of the District Director of the Immigration and Naturalization Service denying Suzan Marwan Abdul–Khalek's application for naturalization be and hereby is AFFIRMED.

---

6. The Court notes that this denial of her application does not mean that Petitioner is permanently barred from naturalization. She may re-apply four years and a day after she re-establishes residency in the United States.

7. This decision renders the Defendant's Motion for Summary Judgment MOOT.